**In re William and Vesta PRINES, Debtors.**

**UNITED STATES TRUSTEE, Appellee,**

v.

**William PRINES, III, Vesta L. Prines, d/b/a Creative Communications, Appellants.**

**No. 88–5070.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1988.

Decided Feb. 10, 1989.

Jonathan K. Van Patten, Vermillion, S.D., appellants.

John E. Logan, Dept. of Justice, Washington, D.C., for appellee.

Before HEANEY [*] and BEAM, Circuit Judges, and LARSON,[**] Senior District Judge.

LARSON, Senior District Judge.

This appeal concerns the application of the quarterly fee provision of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3088. The district court[1] reversed the bankruptcy court's decision, 82 B.R. 110 holding the fee provision applied to pending cases in districts participating in the United States Trustee Pilot Program and remanding for an assessment of the amount of quarterly fees owed by the debtors. The debtors have appealed. We hold the district court's order is an appealable "final order" under 28 U.S.C. § 158(d); we find the court properly construed the quarterly fee provision to apply to pending cases in pilot trustee program districts; and we conclude the statute, as construed, does not violate the equal protection clause or constitute an unlawful taking under the fifth amendment.

Congress established the United States Trustee Pilot Program in 1978 to separate —on a trial basis—the administrative and judicial functions previously performed solely by the bankruptcy courts. See The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 224, 1978 U.S.Code Cong. & Admin.News (92 Stat.) 2549, 2662–65 (codified at 28 U.S.C. §§ 581 et seq.) (amended 1986). Ten United States Trustee positions were created in selected federal judicial districts throughout the country, including South Dakota, in order to leave bankruptcy judges "free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination." H.R. Rep. No. 764, 99th Cong., 2d Sess. 18, reprinted in 1986 U.S.Code Cong. & Admin.News 5227, 5230. The trustees were given responsibility for many administrative functions, such as appointing private trustees and monitoring their performance,

and monitoring cases for signs of fraud or abuse. Id. at 17–20, reprinted in 1986 U.S.Code Cong. & Admin.News 5229–32. See generally 28 U.S.C. § 586(a) (1982 & Supp. IV 1986).

The 1986 Act expanded and implemented the trustee program on a nationwide basis. A total of eighteen regional trustee districts were established by combining judicial districts within circuits. H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, reprinted in 1986 U.S.Code Cong. & Admin.News 5235. While stating the program "provides a great service to our country's bankruptcy system" and should not have to be self-funded, Congress nonetheless believed that "in this time of budget deficit concerns, self-funding becomes a necessity." Id. Hence, a United States Trustee System Fund was created, funded primarily through increased filing fees and quarterly trustee fees. See Pub.L. No. 99–554, § 115, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3094 (codified at 28 U.S.C. § 589a (Supp. IV 1986)). Through creation of this fund Congress sought to ensure the trustee program would be paid for "by the users of the bankruptcy system—not by the taxpayer." H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, reprinted in 1986 U.S. Code Cong. & Admin.News 5234.

The quarterly fee provision, contained in section 117(4) of the 1986 Act, imposes fees on a sliding scale in chapter 11 cases based upon the disbursements in the case prior to confirmation of a plan of reorganization. Pub.L. No. 99–554, § 117(4), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3095 (codified as amended at 28 U.S.C. § 1930(a)(6) (Supp. IV 1986)). Fees range from a minimum of $150 per quarter for disbursements of less than $15,000 to $3,000 per quarter for disbursements of $3,000,000 or more. Id.

The debtors in this case filed their voluntary chapter 11 petition on August 14, 1986, prior to the enactment of the 1986 Act. Because South Dakota had participated in the pilot trustee program since

---

[*] The HONORABLE GERALD W. HEANEY assumed Senior Status January 1, 1989.

[**] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of

Minnesota, sitting by designation.

1. The Honorable John P. Jones, United States District Judge for the District of South Dakota.

1979, the trustee participated in the first creditor meeting held October 1, 1986. That same month, the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 was signed by the President. The Act generally became effective November 26, 1986. *Id.* § 302(a), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3119.[2] The debtors' plan was submitted in December, 1986, and was confirmed by the bankruptcy court on June 17, 1987. The case was thus pending for three quarters after the general effective date of the 1986 Act.

## I. JURISDICTION

Before discussing the merits, we must first address whether this case is properly before the Court. Under 28 U.S.C. § 158(d), the jurisdiction of this Court is limited to final orders in bankruptcy matters. 28 U.S.C. § 158(d) (Supp. IV 1986).[3] While the bankruptcy court's order denied the trustee's motion for fees, the district court reversed this decision and remanded the case to the bankruptcy court for purposes of computing the appropriate fee.

Hence, the issue presented is whether the district court's remand precludes a finding that its order is "final." While remand orders are ordinarily not considered final for purposes of appeal,

> a decision requiring remand may be considered final if the district court has effectively resolved the merits of the controversy ... and on remand all that remains "is a purely mechanical, computational, or in short, 'ministerial' task, whose performance is unlikely to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal from the order of remand."

**2.** Section 302 of the Act also appears as a note to the trustee provisions, codified at 28 U.S.C. § 581 (Supp. IV 1986).

**3.** 28 U.S.C. § 158(d) (Supp. IV 1986) provides: The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

*In re Vekco, Inc.*, 792 F.2d 744, 745 (8th Cir.1986) (citations omitted). *See In re Lift & Equipment Service, Inc.*, 816 F.2d 1013, 1015–16 (5th Cir.), *modified on other grounds*, 819 F.2d 546 (5th Cir.1987).

The district court in this case addressed and resolved the issue of whether the quarterly fee provision applied to pending cases such as the debtors'. The purpose of the remand is to calculate the exact amount of fees owed for the period between the effective date of the 1986 Act, November 26, 1986, and the date of confirmation of the debtors' plan of reorganization, June 17, 1987. Because the fees are set by statute based on quarterly disbursements, on remand the bankruptcy court will simply review the required reports for the three quarters in which the debtors' case was pending and will assess the appropriate fee as provided in the statute.[4]

The government, in effect, concedes such a task is "purely ministerial," but argues this case is complicated by the operation of the plan of reorganization since confirmation. We find the tasks remaining do not involve substantial discretion on the part of the district court, however, *cf. In re Vekco, Inc.*, 792 F.2d at 745 (bankruptcy court on remand would further develop factual record and would exercise considerable discretion), and we conclude we have jurisdiction to hear this appeal. *See In re Lift & Equipment Service, Inc.*, 816 F.2d at 1016. *See also In re Morse Electric Co.*, 805 F.2d 262, 263–65 (7th Cir.1986).

## II. THE STATUTE

Prior to amendment by the 1986 Act, 28 U.S.C. § 1930(a) contained four sections assessing various filing fees for "the parties commencing a case under title 11;" no quarterly fees were assessed.[5] Section

**4.** Because of the lack of assets in this case, the debtors stated at oral argument that the fee will be $150 per quarter. *See* 28 U.S.C. § 1930(a)(6) (Supp. IV 1986). The United States appears to agree with this assessment. *See* Appellee's Br. at 22 n. 8.

**5.** Section 1930(a) provided as follows: Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay ... the following filing fees:

117 of the 1986 Act increased the fees under subsections (1), (3), and (4), and added a subsection (5), imposing filing fees of $200 for a case commenced under the newly-enacted chapter 12. Pub.L. No. 99–554, § 117, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3088, 3095. In addition, and most importantly for purposes of this appeal, section 117(4) contained the following subsection (6):

> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first. The fee shall be $150 for each quarter in which disbursements total less than $15,000; $300 for each quarter in which disbursements total $15,000 or more but less than $150,000; $750 for each quarter in which disbursements total $150,000 or more but less than $300,000; $2,250 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $3,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

*Id.*

Section 302 contained the Act's effective dates. *Id.* § 302, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3119–24 (reprinted as a note to 28 U.S.C. § 581 (Supp. IV 1986)). Subsection (a) contained the Act's general effective date and provided as follows:

> Except as provided in subsections (b), (c), (d), (e), and (f), this Act and the amendments made by this Act shall take

effect 30 days after the date of the enactment of this Act.

*Id.,* 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3119. As indicated previously, the President signed the 1986 Act October 27, 1986, so the Act generally became effective November 26, 1986. Subsections (b), (c), and (f) of section 302 address the effective dates of amendments not germane to the issues presented in this appeal. Subsections (d) and (e) address the effective dates of the trustee program and the quarterly fee provisions.

Subsection (d) concerns the effective dates of the trustee program in those judicial districts which did not participate in the pilot trustee program. In creating the eighteen district nationwide trustee program, Congress grouped some non-pilot judicial districts with pilot districts. Subsection (d)(1) provides that the Act's trustee provisions do not become effective or apply to pending cases in non-pilot districts appended to pilot districts until two hundred seventy days after the Act's general effective date or thirty days after the Attorney General certifies the district, whichever occurs first. *Id.* § 302(d)(1), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3120. Congress anticipated the permanent program would be phased in relatively easily in those judicial districts grouped with a district where a pilot program had already been operating. H.R.Rep. No. 764, 99th Cong., 2d Sess. 29, *reprinted in* 1986 U.S. Code Cong. & Admin.News 5242.

In trustee districts composed solely of non-pilot judicial districts, section 302(d)(2) provides that the trustee provisions would go into effect two years after the Act's general effective date or thirty days after the Attorney General certifies the district, whichever occurs first. Pub.L. No. 99–554, § 302(d)(2), 1986 U.S.Code Cong. & Admin. News (100 Stat.) 3120–21.[6] Nothing in sub-

---

(1) For a case commenced under chapter 7 or 13 of title 11, $60.
(2) For a case commenced under chapter 9 of title 11, $300.
(3) *For a case commenced under chapter 11 of title 11 that does not concern a railroad* ... $200.
(4) *For a case commenced under chapter 11 of title 11 concerning a railroad* ... $500.
28 U.S.C. § 1930(a) (1982).

**6.** Subsection (d)(3) contains separate effective date provisions for districts in North Carolina and Alabama which are given the option of electing to be included in one of the nationwide districts. Pub.L. No. 99–554, § 302(d)(3), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3088, 3121–23.

section (d) directly pertains to the district in which the debtors filed their petition in this case, since the district of South Dakota participated in the pilot program.

Subsection (e) of section 302 addresses the effective dates of the quarterly fee provision. For cases in non-pilot trustee districts commenced before the effective date of the Act, neither the trustee provisions nor the quarterly fee provision apply until one year after the Attorney General certifies the district or until three years after the effective date of the Act, whichever occurs first. *Id.* § 302(e)(1), 1986 U.S. Code Cong. & Admin.News (100 Stat.) 3123. If a plan is confirmed before this time, no quarterly fees are required in pending cases in these non-pilot districts. *Id.* § 302(e)(2), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3123. Thus, subsections (1) and (2) of section 302(e) subject pending cases in non-pilot districts to the Act's trustee and quarterly fee provisions somewhat later than cases filed after the effective date of the Act in each non-pilot district. Like subsection (d), subsections (e)(1) and (2) do not apply to South Dakota, because South Dakota is a pilot program district.

Section 302(e)(3) is not limited to non-pilot districts, and so applies to the assessment of the quarterly fee in this case. It states simply that no quarterly fees may be assessed for periods prior to the effective date of the Act in the district in which a case is pending:

> RULE OF CONSTRUCTION REGARDING FEES FOR CASES. This Act and the amendments made by section 117(4) of this Act shall not be construed to require the payment of a fee under paragraph (6) of Section 1930(a) of title 28, United States Code, in a case under title 11 of the United States Code for any conduct or period occurring before such paragraph becomes effective in the district in which such case is pending.

*Id.* § 302(e)(3), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 3123.

Reading the quarterly fee provision of section 117 together with the effective date provision of section 302 applicable to pilot program districts such as South Dakota, the district court concluded that quarterly fees must be assessed for pending cases in pilot program districts from the general effective date of the Act, November 26, 1986, until such time as a plan was confirmed. The court rejected the debtors' arguments that the statute, as construed, was unconstitutional. This appeal followed.

The debtors raise basically the same arguments on appeal as they did before the district court. The debtors contend the preamble language of section 1930(a) limits the application of the quarterly fee provision (codified at subsection (6) of section 1930(a)) to those cases filed after the effective date of the Act. The debtors further contend the district court's interpretation of the statute runs afoul of the equal protection clause, since pending cases in non-pilot districts are treated differently than pending cases in pilot districts. Finally, the debtors argue the district court's construction of the Act constitutes a taking without just compensation in violation of the fifth amendment.

### III. APPLICATION OF QUARTERLY FEE PROVISION IN PILOT PROGRAM DISTRICTS

The general effective date provision in section 302(a) and the rules of construction for fees contained in section 302(e)(3) plainly support the application of the quarterly fee provision to pending cases in pilot program districts after November 26, 1986. Section 302(a) states the amendments to the Act shall take effect thirty days after enactment, except as provided in subsections (b) through (f). The only subsection applicable to quarterly trustee fees in pilot program districts is subsection (e), which states that fees may not be assessed until after the effective date of the Act in the district in which the case is pending, which, for pilot program districts, is the general effective date.

The debtors would have this Court disregard the provisions of section 302, and focus solely on the preamble language of section 1930(a), which states:

Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay ... the following filing fees....

28 U.S.C. § 1930(a) (Supp. IV 1986). The debtors argue this preamble language limits the application of the quarterly fee provision to those cases filed after the effective date of the Act. The debtors have cited no authority nor any persuasive reason why section 302 should be, in effect, written out of the 1986 Act. This Court has recently refused to alter the effect of another of section 302's provisions, section 302(c), in the face of inconsistent legislative history. *In re Erickson Partnership*, 856 F.2d 1068, 1069-71 (8th Cir.1988). While debtors might contend this case involves inconsistencies in the statute itself, as the government correctly points out, the preamble language in section 1930(a) existed prior to the 1986 Act, when section 1930(a) pertained only to filing fees. Moreover, the preamble refers only to "filing fees." The new subsection (6) added by section 117(4) of the 1986 Act did not, by its terms, impose a filing fee, but rather assessed, on a quarterly basis, a fee against the disbursements made by an estate reorganizing under chapter 11 of the Bankruptcy Code.

As we have stated previously, the primary objective of statutory construction is to determine legislative intent. *E.g., United States v. Jones*, 811 F.2d 444, 447 (8th Cir.1987). In carrying out this duty, we must consider the statute as a whole, interpreting language in one section of a statute consistently with language of other sections and with the purposes of the statute. *Id.; Sierra Club v. Clark*, 755 F.2d 608, 613 (8th Cir.1985).

The purpose of the quarterly fee provision is to ensure the trustee program is "paid for by the users of the bankruptcy system—not by the taxpayer." H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5234. The legislative history reveals Congress' intent that increased *filing* fees not apply to pending cases in pilot program districts, but contains no similar indication with respect to the newly-imposed quarter-

ly fees. *See id.* at 29, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5242.

While neither section 302(a) nor section 302(e)(3) expressly state quarterly fees shall be assessed in pending cases in pilot program districts immediately upon the general effective date of the Act, that is their plain meaning. Moreover, subsections (1) and (2) of section 302(e) expressly provide that the quarterly fee provision *would* be applied to pending cases in non-pilot districts, at the same time that the trustee began to exercise authority over the case.

The debtors concede the trustee exercised authority and undertook various administrative responsibilities in connection with their case. Based upon the plain meaning of the language used by Congress, as well as the overall structure and legislative history of the 1986 Act, we agree with the district court that quarterly fees must be assessed in pending cases in pilot program districts as of the general effective date of the Act. Accordingly, we find the court properly remanded this case to the bankruptcy court for the assessment of quarterly fees from November 26, 1986, until the debtors' plan was confirmed.

## IV. CONSTITUTIONAL CONSIDERATIONS

### A. Equal Protection

Debtors argue strongly that the statute, as construed, violates the equal protection clause because quarterly fees are not imposed on debtors with pending cases in non-pilot districts until one year after the district is certified, whereas quarterly fees are assessed on pending cases in pilot program districts immediately upon the effective date of the Act. While this is true, the trustee does not assume authority over pending cases in non-pilot districts until one year after the district is certified (or three years after the effective date of the Act, whichever comes first). *See* Pub. L. No. 99-554, §§ 302(e)(1) & (2), 1986 U.S. Code Cong. & Admin.News (100 Stat.) 3123. Thus, consistent throughout the implementation of the nationwide system is

the principle that liability for the quarterly fee commences upon the assumption of authority over the case by the United States Trustee. Arguably, debtors are being treated equally by the statutory scheme, since pending cases are subject to the quarterly fee assessment only if the trustee has authority over them.

Assuming unequal treatment, however, we find this statutory scheme is rationally related to the legitimate governmental interest of establishing a nationwide self-supporting trustee system. The debtors argue some measure of heightened scrutiny is required because of the Constitution's provision for *uniform* bankruptcy laws, *see,* U.S. Const. art. I, § 8, but the Supreme Court has held directly to the contrary, finding the appropriate standard for measuring the propriety of classifications in bankruptcy legislation to be "that of rational justification." *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973). The assessment of a quarterly fee to fund the trustee program consistent with the exercise of authority by the trustee over a case satisfies the rational basis test. *See id.* at 447–48, 93 S.Ct. at 638–40.

### B. Taking Without Just Compensation

■■■ The debtors' final argument is that imposition of a quarterly fee on pending cases amounts to an unconstitutional taking of property, because the rights of the parties are determined in bankruptcy as of the date of the filing of the petition. There is no "set formula" for determining when "justice and fairness" require governmental action be deemed a "taking of property" under the fifth amendment. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) (and cases cited therein). Property interests are created and defined not by the Constitution, but by existing rules or understandings which stem from an independent source such as state law. *Id.* at 1001, 104 S.Ct. at 2871. Whether governmental action constitutes a taking of property is essentially an "ad hoc, factual" determination, taking into account: (1) the character of the governmental action; (2)

its economic impact; and (3) its interference with reasonable investment-backed expectations. *Id.* at 1005, 104 S.Ct. at 2874. A reasonable investment-backed expectation "must be more than a 'unilateral expectation or an abstract need'" to be entitled to protection under the fifth amendment. *Id. See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980) (and cases cited therein).

Although the filing date in a bankruptcy case is important, *see Koch v. Myrvold,* 784 F.2d 862, 863 (8th Cir.1986); *In re Turley,* 705 F.2d 1024 (8th Cir.1983), we reject the debtors' contention that it creates a tangible property right in this situation. *See generally Bowen v. Public Agencies Opposed to Social Sec. Entrapment,* 477 U.S. 41, 54–56, 106 S.Ct. 2390, 2398–99, 91 L.Ed.2d 35 (1986). Carried to its logical conclusion, debtors' argument would mean no increases in fees, taxes, or assessments could be applied to any bankruptcy case after filing, a proposition we are unable to accept. *See id.* at 53–54, 106 S.Ct. at 2397–98. As section 302(e)(3) clearly states, the quarterly fee provision in this case operates only prospectively. *See Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922). We find debtors had no more than a "unilateral expectation" that Congress would enact no new fees applicable to their bankruptcy case, and we hold that application of the quarterly fee provision to pending cases in pilot program districts as of the effective date of the 1986 Act does not amount to an unconstitutional taking.

### V. CONCLUSION

The trustee was already exercising authority over pending cases in pilot program districts as of the effective date of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986. The effect of the Act, for debtors with pending cases in pilot program districts, was to change the funding mechanism for the trustee program from general revenues to user fees in the form of a quarterly fee based upon the disburse-

ments prior to confirmation of a plan of reorganization. The district court's order so construing the Act is properly before this Court for review, and, finding no error in the court's statutory interpretation or constitutional analysis, we affirm the judgment of the district court in its entirety.