In the Matter of UPTON PRINTING, Debtor.

Bankruptcy No. 95–12256.

United States Bankruptcy Court, E.D. Louisiana.

July 1, 1996.

Pamela V. Hansen, Draper & Culpepper, New Orleans, LA, Joseph B. Landry, New Orleans, LA, Robert Gravolet, Staff Attorney, Office of the U.S. Trustee.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter came before the court on May 15, 1996 as a hearing on the debtor's motion for final decree (Pl. 81) and on the objection thereto filed by Fine Papers, Inc. (Pl. 85) and the U.S. Trustee ("UST") (Pl. 93). The objection filed by Fine Papers, Inc. was resolved. At the hearing, the court granted the debtor's motion for final decree, and took under advisement the issue of whether any post-confirmation fees were due to the UST. The court has reviewed the record, memo-

randa, and applicable law, and makes the following determinations.

## I. *FACTUAL BACKGROUND*

The debtor filed the pending case under Chapter 11 of the Bankruptcy Code on June 21, 1995. The debtor's liquidating plan of reorganization was confirmed by the court on January 18, 1996. (Pl. 78). The order confirming the plan was entered on January 22, 1996. (Pl. 78).

The final decree, signed by the court on May 15, 1996, was entered on May 17, 1996. (Pl. 96). The court reserved the issue of whether any post-confirmation fees are due to the UST.

## II. *ANALYSIS*

■ On January 26, 1996, the Balanced Budget Downpayment Act, I, Publ.L. No. 104–99, Title II, § 211, 110 Stat. 37 which amended 28 U.S.C. § 1930(a)(6) (the "amended statute") providing for the payment of fees to the UST, was signed into law. The amended statute provides in pertinent part:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until the case is converted or dismissed, whichever occurs first.* [emphasis added].

28 U.S.C. § 1930(a)(6). The effective date of the amended statute is January 27, 1996.

The prior version of Section 1930(a)(6) (the "prior statute") provided in pertinent part:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until a plan is confirmed or the case is converted or dismissed, whichever occurs first.* [emphasis added].

The only change made in the amended statute from the prior statute was to delete the phrase "a plan is confirmed or". The amended statute increases the fees owed to the UST by providing for the payment of fees in Chapter 11 cases after a plan has been confirmed. Previously once a plan had been confirmed, no further fees were owed to the UST. The problem that now arises is how to apply the statute to pending Chapter 11 cases with confirmed plans already in effect on the effective date of the amended statute.

The UST argues that the debtor owes post-confirmation quarterly fees in accordance with the amended statute from the effective date of the statute on January 27, 1996 until the case is closed by final decree.

The debtor contends that it does not owe post-confirmation fees because the plan was confirmed prior to the effective date of the amended statute, and that imposition of post-confirmation quarterly fees would be an improper, retroactive application of the statute.

The issue to be determined is whether the debtor must pay quarterly fees to the UST from January 27, 1996 until entry of the final decree.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court analyzed what constitutes a retroactive statute, and when retroactive statutes are permissible. The Supreme Court stated:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505.

Based on this analysis, the court must first determine the proper reach of the amended statute. The amended statute contains no language indicating whether the statute is meant to be applied retroactively or prospectively.

The legislative history does, however, contain language indicating the types of cases to which it was meant to apply.

The initial House Report from the Committee on Appropriations provides as follows:

*Decline in Bankruptcy filings.*—The recommendation [to increase the UST's fees] assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget, but reduces the amount of funding to correspond to this decline, which was not reflected in the budget request. The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly. However, because cases with assets to administer often take two to three years, the pending caseload still in progress will require ongoing attention. The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 *to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period).* Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court. [emphasis added].

H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17 (1995).

A later session of the Senate Committee on Appropriations states as follows:

As requested, the Committee recommendation includes an extension of the quarterly fee payments made under chapter 11 *to include the period after a reorganization plan has been confirmed by the bankruptcy court until the case has been dismissed.* [emphasis added].

S.Rep. No. 104–139, 104th Cong., 1st Sess. at 15 (1995).

The language from these first two legislative sessions does not inevitably support the UST's position because cases with confirmed plans are not usually dismissed. Instead, once an estate has been fully administered as set forth in 11 U.S.C. § 350 and Rule 3022 of the Federal Rules of Bankruptcy Procedure, a final decree is entered. Although the final decree includes language "closing" the case, the case is not "dismissed".

The UST contends, however, that a subsequent House Conference Report shows even more clearly congressional intent to apply the statute to pending Chapter 11 cases with confirmed plans. House Conference Report No. 104–378 ("Conference Report") provides:

In addition, under section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills *and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans.* [emphasis added].

H.R.Conf.Rep. 104–378, 104th Cong., 1st Sess. at 82 (1995).

This language supports the UST's position, and strongly suggests congressional intent to apply the amended statute to all Chapter 11 cases with confirmed reorganization plans pending at the time of enactment of the amended statute.

The debtor responded in oral argument that this legislative history does not provide that fees will be paid in "Chapter 11 cases whose plans have already or on enactment of this law been confirmed". The debtor further argues that the amended statute was meant to apply to Chapter 11 cases that are confirmed after the effective date, which cases will be required to pay UST fees until the case is closed.

Unfortunately for the debtor, the plain meaning of the Conference Report provides that the new fees set forth in the amended statute are to apply to pending Chapter 11 cases *with confirmed reorganization plans.*

The court is aware of only two bankruptcy courts that have addressed this issue. In the case of *In re Northwestern Trading Co., Inc.,* Case No. 93–00029(SEK) (Bankr.D.P.R. May 6, 1996), an unpublished decision, the bankruptcy court interpreted the amended statute "to provide for payment of post petition fees to the U.S. Trustee only if the case is dismissed or converted after the plan is confirmed." *Northwestern Trading Co.,* slip op. at 2. The court denied the U.S. Trustee's objection to entry of the final decree because "this case has neither been converted or dismissed after the confirmation of the plan, but rather Northwestern has completed its payments under the confirmed plan, and the U.S. Trustee has not engaged in any post petition monitoring of this case". *Id.* at 2–3.

The *Northwestern Trading* decision is presently on appeal to the District Court for the District of Puerto Rico.

The second case involving interpretation of the amended statute is the case of *In re Central Florida Electric, Inc.*, 194 B.R. 280 (Bankr.M.D.Fla.1996), *modified on reconsideration, In re Central Florida Electric, Inc.*, 197 B.R. 380 (Bankr.M.D.Fla.1996). In its initial decision, the bankruptcy court held that the amended statute should have only a prospective application, and that the provisions of the amended statute which require Chapter 11 debtors in pending cases to pay fees to the UST until the case is closed or dismissed is not applicable to cases in which a confirmation order was entered prior to the effective date of the amended statute. *In re Central Florida Electric, Inc.*, 194 B.R. 280 (Bankr.M.D.Fla.1996). On the UST's motion for reconsideration, the bankruptcy court relied upon the Conference Report and modified its holding. *In re Central Florida Electric, Inc.*, 197 B.R. 380 (Bankr.M.D.Fla.1996). In its second opinion, the bankruptcy court held that this was not a retroactive application of the amended statute because the UST had changed its prior position, and was seeking fees only for the period following the effective date of the amended statute until the case was closed or dismissed. *Id.* The *Central Florida Electric* case further held that to the extent there was any retroactive application of the amended statute, it was not constitutionally infirm based upon the Supreme Court case of *U.S. v. Carlton*, — U.S. ——, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994).[1]

Upon review of the legislative history and applicable law, the court finds the UST's position is correct. As stated in *Landgraf v. USI Film Products*, — U.S. at ——, 114 S.Ct. at 1496 " 'where the congressional intent is clear, it governs' ", *quoting, Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837–38, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). The Conference Report provides that the new fees set forth in the amended statute are to apply to pending Chapter 11 cases with confirmed reorganization plans. The case at bar was a pend-

ing case with a confirmed Chapter 11 plan at the time the amended statute became effective. The court agrees with the opinion on reconsideration in *Central Florida Electric, supra* at 619, and disagrees with *Northwestern Trading Co., supra* at 619, because *Northwestern* did not consider the legislative history of the amended statute.

In addition, the present facts are analogous to *In re Prines*, 867 F.2d 478 (8th Cir.1989), in which the Eighth Circuit held that quarterly fees could be assessed in pending cases in districts participating in the United States Trustee Pilot Program immediately upon the effective date of the act imposing the fee.

The court next addresses the retroactivity issue. The UST contends the amended statute is not retroactive as applied because the amended statute charges fees only for the period after January 27, 1996.

The *Landgraf* decision supports the UST's position. The *Landgraf* court held:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation omitted], or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

*Landgraf*, —— U.S. at ——, 114 S.Ct. at 1499.

Based on these precepts, the amended statute does not appear to be retroactive as applied because the new fees apply only for the period after the effective date of the statute, and therefore it does not attach legal consequences to events completed before its enactment.

■■ Even if the amended statute does operate retroactively, the debtor's argument that the amended statute is inequitable cannot prevail. Retroactive legislation affecting economic rights must be justified by a rational legislative purpose. *U.S. v. Carlton*, —— U.S. ——, ——, 114 S.Ct. 2018, 2022, 129 L.Ed.2d 22 (1994). So long as this requirement is met, "judgments about the wisdom of

---

1. The Supreme Court held in *Carlton* that retroactive application of a tax statute did not offend due process because there was a rational basis for the statute and Congress' purpose was neither illegitimate nor arbitrary.

such legislation remain within the exclusive province of the legislative and executive branches". *Id.*

The amended statute requiring fees to be paid in a Chapter 11 case after confirmation of a plan is a legitimate legislative purpose supported by a rational means. *See* H.R.Rep. No. 104–196, *supra* at 618. The amendment was enacted as a means to collect additional revenues to support the self-funded administration of bankruptcy cases. *Id.* *See also In re Prines,* 867 F.2d at 480 (The United States Trustee program is meant to be self-funded, and to be paid for by the users of the bankruptcy system).

For these reasons, the court finds that the debtor owes the quarterly fees set forth in the amended statute from the effective date of the statute on January 27, 1996 through the date of entry of the final decree, May 17, 1996.