In re MOTION TO UNSEAL ELECTRONIC SURVEILLANCE EVIDENCE.

Howard J. SMITH, Appellant,

v.

Donn H. LIPTON, Appellee.

No. 91–2385.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided May 29, 1992.

Robert S. Adler, St. Louis, Mo., argued, for appellant.

Joe D. Jacobson, St. Louis, Mo., argued (Martin M. Green, on the brief), for appellee.

Before ARNOLD,* Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Appellant, Howard J. Smith, filed a motion to unseal electronic surveillance evidence. The district court denied Smith's motion. We reverse and remand.

## I. BACKGROUND

The action that forms the basis of this appeal involves several real estate development deals gone awry. In that action, Howard Smith sued Donn Lipton claiming fraud, tortious interference, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). *See Smith v. Lipton,* Cause No. 892–03316 (E.D.Mo. July 10, 1990).

During the discovery phase of the above action, Smith sought to have the contents of several intercepted conversations concerning real estate development. in the downtown St. Louis area between Lipton and former St. Louis Alderman Sorkis Webbe, Jr. made available to him for use in his civil suit.[1] Smith believes the intercepted conversations contain evidence pertinent to his RICO claims. The district court held that its authority to make the intercepted conversations available to Smith must lie in section 2517 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (Title III), and construed that section as denying it such authority in the present case.[2] Al-

---

* The HONORABLE RICHARD S. ARNOLD became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. The government recorded these conversations during a criminal investigation of Sorkis Webbe, Jr. in the 1980s. *See* 18 U.S.C. §§ 2510–2520 (1988).

2. The pertinent portions of section 2517 are as follows:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

though we agree that section 2517 governs, we find that under limited circumstances, intercepted communications not previously made public may be made available to private litigants.

## II. DISCUSSION

■ We interpret a statute by looking to the words of the statute and giving them their plain meaning. Section 2517 is structured to permit investigative or law enforcement officers to make effective use of intercepted wire, oral or electronic communications. Section 2517(1) permits officers to disclose the communications or derivative evidence to other officers. Section 2517(2) permits officers to use the communications or derivative evidence to the extent appropriate or proper in performing their official duties. Section 2517(3) permits any person to make the contents of an intercepted communication public through testimony under oath in "any proceeding held under the authority of the United States or of any State." The words "any proceeding" are clearly sufficient to include private civil actions such as the one in this case. *See, e.g., Dowd v. Calabrese,* 101 F.R.D. 427, 435 (D.D.C.1984) (holding that to the extent wiretaps are public, they can be used in a subsequent civil proceeding). Section 2517(3), however, is not without its limitations. Before the contents of an intercepted communication can be introduced in a proceeding, the party seeking introduction must establish that he ob-

tained the information by a means authorized under Title III. *See* 18 U.S.C. §§ 2515, 2517(3) (1988).

We assume without deciding that no question exists as to the government's authority to intercept the communications at issue here. Consequently, the government may, without question, make public through testimony the contents of any intercepted communication related to the offenses specified in the original wiretap authorization or approval. *See id.* § 2517(3). Furthermore, under section 2517(5) a judge may permit the government to make public through testimony the contents of intercepted communications related to offenses other than those specified in the wiretap authorization or approval. Implicit in this grant of power to the judge is the judge's authority to grant access to the intercepted communications. The gravamen of this case, then, is whether section 2517(5) permits a judge to grant access to intercepted communications to private litigants for use pursuant to section 2517(3) where the government has not previously made the communications public. Because Title III does not directly address this issue, we first look to the purpose and intent of Congress in enacting Title III for guidance in resolving this case.

Before the enactment of Title III, the use of evidence obtained by wiretap was banned, except if the wiretap was conducted pursuant to the warrant procedure mandated by the Fourth Amendment. *See*

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in *any proceeding held under the authority of the United States or of any State or political subdivision thereof.*
. . . .

(5) When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order or authorization or approval, the contents thereof, and evidence derived therefrom, *may* be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom *may* be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. . . .

18 U.S.C. § 2517 (1988) (emphasis added).

*Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). Recognizing the importance of wiretap information in criminal prosecutions, Congress responded to *Katz* by enacting Title III. In Title III, Congress sought to balance the needs of criminal-law enforcement with the privacy interest of individuals engaged in wire, oral, or electronic communications. *See Title III—Wiretapping and Electronic Surveillance: Findings*, Pub.L. No. 90–351, § 801, 82 Stat. 211, 211 (1968); *see also* 18 U.S.C. § 2515 (1988); *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972) (holding that illegal interception of an oral or wire communication is grounds for exclusion of such evidence from any proceeding). Congress struck a balance by permitting government interception of wire, oral or electronic communications, but only for specifically enumerated serious crimes and with prior court approval. 18 U.S.C. § 2516 (1988) (listing particular offenses for which a wiretap authorization may be sought); *id.* § 2518(1) (setting forth the requirements for obtaining a wiretap order).

In 1970, Congress focused its attention on organized crime, enacting the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922, *reprinted in* 1970 U.S.C.C.A.N. 1095. Two of Smith's counts in the lawsuit below are under Title IX of that act, RICO, which provides for both criminal and civil penalties. Prior to the enactment of RICO, section 2517(3) only allowed intercepted communications and derivative evidence to be made public through testimony in criminal proceedings.[3] Within RICO, Congress amended section 2517(3), eliminating the criminal-proceeding restriction and allowing testimony disclosing the contents of an intercepted communication or derivative evidence in "any proceeding." *See* Organized Crime Control Act of 1970, § 902(b), *reprinted in* 1970

U.S.C.C.A.N. 1073, 1104. It also amended section 2516(1)(c) to include RICO as one of the enumerated crimes for which wiretapping is authorized. *See id.* § 902(a). Because RICO contains a civil private attorney general provision, 18 U.S.C. § 1964(c), and Congress placed the amendment to section 2517(3) within this act, some courts have intimated that granting access to private litigants of previously unreleased intercepted communications may be appropriate in private civil actions based on RICO. *See, e.g., County of Oakland v. City of Detroit*, 610 F.Supp. 364 (E.D.Mich.1984), *appeal denied*, 762 F.2d 1010 (6th Cir. 1985). It is not at all clear, however, that Congress intended this result. Although Congress included the amendment to section 2517(3) within the RICO act, RICO as originally passed and reported by the Senate did not include the private civil remedy section relied on by Smith here. *See* S.Rep. No. 617, 91st Cong., 1st Sess. 24 (1969). That remedy appeared in the House version of the act and the version eventually adopted by the full Congress. *See* H.R.Rep. No. 1549, 91st Cong., 2d Sess. 18, *reprinted in* 1970 U.S.C.C.A.N. 4007, 4034. However, no commentary within the House report on the act speaks to whether the "any proceeding" amendment to section 2517(3) was meant to allow private civil RICO litigants access to intercepted communications not previously made public by the government, and we decline to speculate concerning Congress' intent. The resolution of this issue, therefore, requires that we look elsewhere.

■ Absent Title III, the protections given communications are governed by the Fourth Amendment: communications receive no greater protection. *See Katz*, 389 U.S. at 353, 88 S.Ct. at 512 (recording communications constitutes a search and seizure under the Fourth Amendment); *see*

---

**3.** Before the 1970 amendment, section 2517(3) read as follows:

Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communica-

tion or such derivative evidence while giving testimony under oath or affirmation in *any criminal proceeding* in any court of the United States or of any State or in any Federal or State grand jury proceeding.

18 U.S.C. § 2517 (Supp. IV 1965–68) (emphasis added). For current version, see *supra* note 1.

*also Berger v. New York*, 388 U.S. 41, 51, 87 S.Ct. 1873, 1879–80, 18 L.Ed.2d 1040 (1967). Consequently, unless limited by Title III, lawfully intercepted communications should be treated much the same as any other evidence seized pursuant to the Fourth Amendment, and discovery and admission at trial should be permitted once the proper evidentiary and policy factors are appropriately weighed. In enacting Title III, however, Congress did seek, in some ways, to differentiate communications from other types of evidence. A wiretap order may only be granted for specifically enumerated crimes, 18 U.S.C. § 2516, and only when information more extensive than that required to establish probable cause is furnished to the judge issuing the order, *see* 18 U.S.C. § 2518. These requirements make manifest Congress' overriding concern for the protection of conversational privacy. *Gelbard*, 408 U.S. at 48, 92 S.Ct. at 2361; *see also* S.Rep. No. 1097, 90th Cong., 2d Sess. 66, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153. Even where a communication is lawfully intercepted, Congress did not wish to negate an individual's privacy interest in that communication. The mere fact that public officials lawfully intercept communications does not authorize them to indiscriminately disseminate the contents of those communications. Disclosure and use of lawfully intercepted communications are permitted only pursuant to section 2517.

■ Congress' concern for privacy leads us to agree with the Second Circuit that section 2517 should not be used as a general discovery mechanism. *See In re National Broadcasting Co. v. United States Dep't of Justice*, 735 F.2d 51, 54 (2d Cir. 1984). In *National Broadcasting*, the Second Circuit refused to give NBC access to intercepted communications it needed to defend against a libel action. But we do not think that because Congress was concerned with protecting conversational privacy when it enacted Title III, it inexorably follows that lawfully intercepted communications may never be released to private litigants. Much of the discovery done in civil suits implicates confidentiality and privacy interests, and courts are often asked to

carefully balance these interests with the compelling need for discovery. In general, parties may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Parties to litigation may often be required to submit to mental and physical examinations, Fed.R.Civ.P. 35, produce documents and allow entry onto land, Fed.R.Civ.P. 34, and turn over materials produced in preparation for trial, Fed.R.Civ.P. 26(b)(3). Thus the rules of discovery allow intrusions into the private affairs of parties to litigation as well as third parties. *See, e.g., Pagano v. Hadley*, 100 F.R.D. 758 (D.Del.1984) (allowing discovery of unprivileged documents in a priest's personnel file); *Hoffman v. Delta Dental Plan of Minnesota*, 517 F.Supp. 574 (D.Minn.1981) (permitting discovery of financial information of nonparties); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624 (S.D.Fla.1977) (defendants entitled to discovery of plaintiffs' tax returns). Courts often guard the confidentiality and privacy interests implicated in discovery by limiting discovery or issuing protective orders. *See* Fed.R.Civ.P. 26(c) & 30(d).

■ Although we admit that the confidentiality and privacy interests of parties whose communications have been intercepted by the government are significant, we do not believe that this alone should prevent them from being discoverable. We do, however, recognize that Congress sought to protect these interests when it enacted Title III. But, as evidenced by the statute, this protection is not absolute. *See* 18 U.S.C. § 2518(1) (1988) (authorizing wiretaps); *id.* § 2518(8)(b) (allowing disclosure of wiretap applications and orders upon a showing of good cause); *see also United States v. Dorfman*, 690 F.2d 1230, 1234 (7th Cir.1982) (stating that the right to conversational privacy is no more absolute than the right of access). We hold, therefore, that when the specific findings outlined below are made, intercepted communications not previously made public may be made available to private litigants under section 2517.

The findings ensure that the court will carefully balance the competing interests implicated. In particular, the court must balance the need for discovery with the confidentiality and privacy interests of the party opposing disclosure and any government objections to disclosure. Because Congress was greatly concerned with the needs of law enforcement when it enacted Title III, any government objection to disclosure should be afforded great weight. *See, e.g., National Broadcasting,* 735 F.2d at 54 (government opposed disclosure). Additionally, disclosure is never proper unless the party seeking disclosure has shown a compelling need that cannot be accommodated by any other means. Thus, the court should conduct an in camera inspection of the intercepted communications to evaluate whether a compelling need exists. Furthermore, if the confidentiality or privacy interests of a nonparty appear to be substantially compromised by disclosure, the party seeking disclosure has an affirmative duty to notify the nonparty. The court should then grant the nonparty an opportunity to oppose the release of the intercepted communications. Finally, access to intercepted communications should not be turned into a fishing expedition. The party requesting access must particularize his or her request and the district court should issue protective orders as it deems appropriate. We believe that by making these findings, the court will strike the correct balance between the court's function as truth seeker and adjudicator and the confidentiality and privacy interests of parties whose communications have been intercepted.

## III. CONCLUSION

For the reasons stated above we reverse the decision of the district court and remand for findings consistent with this opinion.

HEANEY, Senior Circuit Judge, dissenting.

I would affirm the district court essentially on the grounds stated in its carefully reasoned opinion.

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted). Like the district court, I see no words in section 2517 that permit law enforcement officers to disclose to private litigants information obtained for law enforcement purposes unless that information has first been disclosed in a public trial. Even beyond the plain meaning of section 2517, we are faced with Congress's clear intent to protect the privacy of oral and written communications to the greatest extent possible. *See Gelbard v. United States,* 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (in enacting Title III, "the protection of privacy was an overriding congressional concern"). We violate that intent if we make recorded conversations available to private litigants in civil actions when they have not otherwise been made public.

The majority purports to agree with *National Broadcasting Co. v. United States Dept. of Justice,* 735 F.2d 51 (2d Cir.1984). In fact, the majority misses the point of the Second Circuit's opinion. Recognizing that important policy considerations led Congress to protect the privacy rights of wiretap subjects in Title III, that court refused to order the government to release the recordings that NBC sought. According to the court:

[T]urning Title III into a general civil discovery mechanism would simply ignore the privacy rights of those whose conversations are overheard. We agree with the government that this was not the intent of Congress. *See United States v. Dorfman,* 690 F.2d 1230, 1233 (7th Cir.1982) ("we find no evidence that [the draftsmen of section 2517(3)] wanted to create a public right of access").... Under Title III, with few exceptions not here relevant, no one other than the government can lawfully engage in wiretapping and it therefore is

not so unusual that only the government can enjoy its fruits.

*Id.* at 54.

Rather than follow the Second Circuit's well-reasoned lead, the majority has fashioned a new five-part test that will determine, on a case-by-case basis, whether wiretap recordings should be released to private litigants. While some standards are better than no standards at all, the majority's test is contrary to the plain meaning of section 2517(3) and Congress's intent. Moreover, parts of the test are vague, providing little guidance to district courts that must apply it. For example, it is not clear whether government objection to disclosure should be determinative, or if it might be outweighed by other considerations in some circumstances. Nor does the majority indicate when a nonparty whose privacy interests would be "substantially compromised by disclosure" should be able to prevent release of intercepted communications.

I believe that wiretap subjects are entitled to greater protection under Title III than the majority today provides. Thus, I respectfully dissent.