In re MOTION TO UNSEAL ELEC-
TRONIC SURVEILLANCE EV-
IDENCE.

**Howard J. SMITH, Appellant,**

v.

**Donn H. LIPTON, Appellee.**

No. 91–2385.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1992.

Decided April 6, 1993.

Robert S. Adler (argued), St. Louis, MO, for appellant.

Gerald P. Greiman, (argued), Clayton, MO (Martin M. Green and Joe D. Jacobson, on brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, en banc.

HEANEY, Senior Circuit Judge.

Howard J. Smith filed a motion to unseal electronic surveillance evidence for use in a state court action against Donn H. Lipton. Finding no authority for such disclosure in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1988) ("Title III"), the district court denied Smith's motion. We affirm.

## I

Smith brought an action against Lipton and others in the Circuit Court of St. Louis City on theories of fraud, breach of fiduciary duty, tortious interference, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988). The action concerns several unsuccessful real estate transactions to which both Smith and Lipton were party.

In preparation for his suit in state court, Smith sought access to electronic surveillance evidence of conversations between Lipton and Sorkis Webbe Sr. and Sorkis Webbe Jr. that he believes will support his allegation of RICO violations by Lipton. He first sought access under the Freedom of Information Act, 5 U.S.C. § 552 (1988), but when that action met no success because the material requested was under seal, Smith filed a motion in federal district court to unseal the electronic surveillance evidence. Smith sought access to the tapes and transcripts of conversations that involved certain pieces of property. Smith v. Lipton, No. 91–643C(1), slip op. at 1 (E.D.Mo. May 7, 1991).

The tapes Smith sought were the product of electronic surveillance of the offices of the Webbes at the Mayfair Hotel in the City of St. Louis conducted by the Federal Bureau of Investigation ("FBI") pursuant to a court order of October 15, 1982, granted under Title III.[1] *United States v. Webbe*, 652 F.Supp. 20, 22 (E.D.Mo.1985). Lipton concedes that the tapes include conversations he had with the Webbes, but that he does not remember the contents of those conversations. Although portions of these tapes were admitted into the trial of Webbe Jr., *United States v. Webbe*, 791 F.2d 103, 104 (8th Cir.1986), the conversations sought by Smith were not included in those admitted into evidence and therefore remain under seal.

## II

It is agreed that authority for release of the tapes under Title III must be found in section 2517.[2] That section provides for

---

[1] No issue has been raised either below or on appeal regarding the propriety of the court order and surveillance. We therefore assume without deciding that the government's interception of the conversations at issue in this case was proper.

We also note that the district court made no finding whether Lipton was a target of the FBI's investigation, a point of dispute between the parties. We likewise find it unnecessary to reach the issue.

One of the dissent's criticisms of the court relies on the assumption that "the wiretaps at issue very likely contain information that may lead to evidence relevant to this civil RICO dispute." *Infra* at 1021. To the best of our knowledge, the wiretaps in question have remained under seal throughout this litigation, and have not been listened to by the district court or by this court. The appellants clearly believe that the wiretaps contain relevant information to their suit, but our decision requires no answer to the issue, and the dissent's assertions on this issue are mere speculation.

[2] The relevant portions of section 2517 provide as follows:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom may

disclosure in a number of circumstances, most of which involve uses for law enforcement. Smith relies on subsections (5) and (3), which provide for disclosure through courtroom testimony of wiretap evidence related to offenses other than those for which the wiretap was sought. Smith argues that in its current form section 2517(3) provides for the disclosure he seeks. As the Second Circuit said of a similar argument, this "argument based on the language of § 2517(3) has a surface plausibility, but only if one concentrates on the language alone and ignores the rest of Title III and the legislative struggle leading to its enactment." *National Broadcasting Co. v. United States Dep't of Justice,* 735 F.2d 51, 53 (2d Cir.1984).[3]

### A

Title III was enacted in response to the Supreme Court's decisions in *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18

---

use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision.

. . . .

(5) When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order or authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. . . .

18 U.S.C. § 2517 (1988).

3. The dissent objects to this citation on a number of grounds. Taking a sentence of the *NBC* opinion out of context, it argues that the Second Circuit misunderstood the Supreme Court's de-

---

L.Ed.2d 1040 (1967), and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which held eavesdropping on private conversations by the state to be a seizure under the Fourth Amendment. *See* S.Rep. No. 1097, 90th Cong., 2d Sess. 66 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153 ("Senate Report"). In enacting Title III Congress recognized, as had Justice Brandeis, that the interception of wire communications raises unique privacy concerns:

> Whenever a telephone line is tapped, the privacy of the persons at both ends of the line is invaded and all conversations between them upon any subject, and although proper, confidential, and privileged, may be overheard. Moreover, the tapping of one man's telephone line involves the tapping of the telephone of every other person whom he may call, or who may call him.

---

cision in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), to ban all use of wiretap evidence. The following sentence of the *NBC* opinion indicates that *Katz* left an exception for wiretap evidence that is procured pursuant to a warrant, an opening that led to the enactment of Title III as discussed *infra.* That the Second Circuit would have more accurately described *Katz* as banning all use of *warrantless* wiretap evidence cannot be disputed, but the dissent's assessment of the *NBC* decision as "wrong" based on a mischaracterization of the opinion in question presents a more serious error.

The dissent further argues that reliance on the "legislative struggle" that led to the enactment of Title III is unprecedented. The disagreement appears to rest initially on whether the language of the amendment, when considered in the context of Title III as a whole, is ambiguous. Though the dissent now chastises this court for looking beyond the language of the statute, the original panel opinion, after examining the statutory language and the legislative history of the amendment, determined that "the resolution of this issue . . . requires that we look elsewhere." *In re Motion to Unseal Elec. Surveillance Evidence,* 965 F.2d 637, 640. The panel opinion relied on various policy considerations in setting out a multi-part test to guide the district court's ruling on a motion under section 2517. *See id.* at 641–42. We simply allow Congress's "overriding concern for the protection of conversational privacy," *id.* at 641, to guide our determination that section 2517 does not authorize disclosure in this case.

*Olmstead v. United States,* 277 U.S. 438, 475–76, 48 S.Ct. 564, 571, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). One of the two stated purposes of Title III was to "protect[ ] the privacy of wire and oral communications." Senate Report at 2153. In passing Title III, Congress made a specific finding on the need for such protection:

> To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of crime with assurances that the interception is justified and that the information obtained thereby will not be misused.

Title III—Wiretapping and Electronic Surveillance: Findings, Pub.L. 90–351, § 801(d), 82 Stat. 211, 211 (1968); *see Gelbard v. United States,* 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) ("although Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern").[4]

■ Congress provided for very limited disclosure of any wiretap evidence that is obtained. It specifically required that recordings made under Title III be sealed by the authorizing judge, *see* 18 U.S.C. § 2518(8)(a) (1988), and provided for disclosure and use of the intercepted conversations under very specific circumstances. When addressing disclosure of the contents of a wiretap, the question is whether Title III specifically *authorizes* such disclosure, not whether Title III specifically prohibits

the disclosure, for Title III prohibits all disclosures not authorized therein. *See United States v. Underhill,* 813 F.2d 105, 110 (6th Cir.), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *United States v. Dorfman,* 690 F.2d 1230, 1232 (7th Cir.1982).

**B**

■ Notwithstanding the drafters' concerns about conversational privacy, Smith argues that the statute now provides for use of previously undisclosed wiretap evidence in private civil RICO actions, and that concomitantly, the authorization of testimonial disclosure includes pretrial access to the contents of the wiretap. He bases his argument on a 1970 amendment to Title III. As originally enacted, section 2517(3) provided for courtroom testimonial disclosure only in criminal proceedings. *See* 18 U.S.C. § 2517(3) (Supp. V 1965–69). With the passage of RICO in 1970, Congress amended the wiretap statute to allow for testimonial use in civil proceedings as well. Organized Crime Control Act of 1970, Pub.L. No. 91–542, § 902(b), 84 Stat. 922, 947 (1970). In support of his argument that the statute now authorizes pretrial disclosure to private civil RICO litigants, Smith cites cases in which wiretap evidence has been used by an agency other than that which initially sought the wiretap. For example, Smith cites to cases in which the Internal Revenue Service obtained wiretap evidence from the FBI for use in civil prosecutions. Such cases provide no authority for disclosure, pretrial or otherwise, to a private civil RICO litigant.

The legislative history of the 1970 amendment adds little support to Smith's argument. As the district court noted, the legislative history

---

4. The dissent suggests that this court's decision in *In re Prines,* 867 F.2d 478 (8th Cir.1989), precludes this court from relying on Congress's intent when it initially enacted Title III in 1968 when we interpret the 1970 amendment at issue in this case, as discussed *infra. Prines* involved a patent inconsistency between an unambiguous statutory amendment and preamble language from an earlier version of the statute. This court properly refused to limit statutory language that postdated the preamble. Despite the validity of the holding in *Prines,* it has no application to this case. The 1970 amendment is ambiguous, and, as discussed *infra,* its legislative history provides no assistance either. We therefore look to the statute as a whole, and the legislative history that led to its enactment, in construing the amendment at issue.

merely indicates the obvious, that the change "amends 18 U.S.C. 2517 to permit evidence obtained through the interception of wire or oral communications under court order to be employed in civil actions." The language of this brief commentary suggests, however, that Congress envisioned the gatherer of such evidence, i.e., a law enforcement or governmental investigative agency, to be the party making use of the evidence in a civil case. If the change had been intended to open the door to private civil litigants, further comment would have been warranted.

*Smith v. Lipton*, No. 91–643C(1), slip op. at 5–6 (E.D.Mo. May 7, 1991) (quoting H.R.Rep. No. 1549, 91st Cong., 2d Sess. 18 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4036); *see also* James G. Carr, *The Law of Electronic Surveillance* § 7.3(b) at 7–42 (2d ed. 1990).

An examination of the situation that preceded the enactment of Title III supports the district court's view. One of the significant protections Title III gives to private conversations is a sweeping exclusionary rule, which applies in all government proceedings, rather than simply in judicial proceedings. *See* 18 U.S.C. § 2515 (1988). The existing exclusionary rule crafted by the Supreme Court did not apply to civil proceedings generally, and the drafters believed that they were expanding the rule. Michael Goldsmith, *The Supreme Court and Title III: Rewriting the Law of Electronic Surveillance*, 74 J.Crim.L. & Criminology 1, 40 n. 232 (1983) (citing Standards Relating to Electronic Surveillance 115 (Approved Draft 1968)). To cut back on the rule of exclusion by allowing the unsealing of wiretap materials for use by private litigants in civil actions would require greater clarity on the part of Congress. Given the overriding concern Congress expressed for the privacy of such conversations when it initially passed Title III, this Court would need greater evidence of Congress's intent to read the 1970 amendment as setting those concerns aside when dealing with private civil RICO litigants.

In answering this concern, Smith relies on the decision of the Department of Justice not to oppose disclosure in this case, contrary to its position in the *NBC* case. To underscore the significance of the Department of Justice's role in these determinations, Smith cites the district court in *County of Oakland v. City of Detroit*, 610 F.Supp. 364 (E.D.Mi.1984), *appeal denied*, 762 F.2d 1010 (6th Cir.1985). Relying on the Second Circuit's *NBC* opinion, that court stated that "the Government is apparently given authority under § 2517(3) to determine whether release of the material would be in the overall public interest." *Id.* at 370. A careful reading of both the statute itself and the Second Circuit opinion belies the district court's conclusion.

In denying NBC's application to inspect wiretap materials for use in defense of a libel suit, the Second Circuit responded to an argument by NBC that it is improper for only the government to be able to make use of wiretaps:

> NBC argues that it is somehow unseemly that only the government can take advantage of wiretaps. This argument does not have much force. Under Title III, with few exceptions not here relevant, no one other than the government can lawfully engage in wiretapping and it therefore is not so unusual that only the government can enjoy its fruits. Beyond that, the government is in a position to make a judgment whether disclosure of the intercepted evidence will or will not be in accordance with the overall public interest, while a private litigant is not.

*NBC*, 735 F.2d at 54. The court of appeals was simply noting why it is not unseemly for the government to be allowed to make use of wiretaps. One reason is that it may have a broader perspective than a private litigant. This is not to say, however, that section 2517(3) grants the government any authority to determine when private litigants may make use of previously undisclosed wiretap information. We find that Title III does not grant the government

such authority.[5]

Finally, Smith argues that a private litigant's need should enter into the equation. Absent statutory authority for such disclosure, need is irrelevant. As the Second Circuit said in *NBC*,

> [W]e are sure that Congress did not utilize a provision in the Organized Crime Control Act to make the fruits of wiretapping broadly available to all civil litigants who show a need for them. Indeed, there might be a question whether Congress could go that far. What the Supreme Court contemplated in *Katz* was a statute making an exception from the general ban for purposes of enforcement of the *criminal* law. If there is a constitutional doubt, the statute should be construed so as to avoid it.

*NBC,* 735 F.2d at 54 (emphasis added).

### C

██ Though we find no provision in Title III to authorize disclosure in this case, even were we to find such authority, the manner of disclosure sought could not be accommodated. At no point does section 2517 authorize pretrial disclosure to private civil litigants. Those courts that have addressed the question have been unanimous on this point. *See, e.g., County of Oakland,* 610 F.Supp. at 371; *Dowd v. Calabrese,* 101 F.R.D. 427, 435 (D.D.C.1984).

### III

In conclusion, we find no authority in Title III for pretrial or compelled testimonial disclosure of sealed electronic surveillance evidence to a private civil RICO litigant. Consequently, we affirm the decision of the district court in its entirety.

BEAM, Circuit Judge, dissenting, with whom RICHARD S. ARNOLD, Chief Judge and BOWMAN, MAGILL, and MORRIS S. ARNOLD, Circuit Judges, join.

I would reverse the district court and remand this case for further proceedings. Subject to the requirements of the panel opinion, *In re Motion to Unseal Electronic Surveillance Evidence,* 965 F.2d 637 (8th Cir.1992), now vacated by the court en banc, I would unseal the electronic surveillance evidence and make it available to Smith. My reasons are set forth in the panel opinion which is incorporated in this dissent by reference.

The court's opinion introduces to this circuit a new concept of legislative interpretation: look not to the statutory language, look instead to the rest of the title into which the words are placed and, remarkably, look to " 'the legislative struggle leading to its enactment.' " Court's Opinion, *supra* at 1017 (quoting *National Broadcasting Co. v. United States Dep't of Justice,* 735 F.2d 51, 53 (2d Cir.1984) (*NBC* )). I suggest that this approach has permitted the court to base its opinion not on the language of the law or on commonly accepted principles of statutory construction, but on the court's own notion of acceptable public policy.[1] Whether or not one agrees

---

5. Based on 28 C.F.R. § 16.26 (1991), which governs disclosure of material by the Justice Department in state or federal litigation, and on the Justice Department's willingness to disclose in this case, Smith further argues that the Justice Department clearly believes it has the authority under Title III to disclose wiretap materials to private litigants with court approval. Though we hold that Title III does not authorize pretrial disclosure or compelled testimonial disclosure at trial, it is not necessary for us to reach the question of purely voluntary testimonial disclosure by the government during the course of private civil RICO litigation. We do note, however, that any such disclosure would appear to require court approval under §§ 2517(3) and (5).

The dissent's reliance on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in regard to this issue is misplaced. *Chevron* addressed the proper deference to be given to "an agency's construction of [a] statute which it administers." *Id.* at 841, 104 S.Ct. at 2780. To say that the Justice Department administers section 2517 is to write out of existence the role of the court, which is statutorily mandated in section 2517(5). As the Justice Department cannot be said to administer this statute, its interpretation of section 2517 is not subject to the level of deference required by *Chevron.*

1. The court also cites a portion of *NBC,* 735 F.2d at 54, to infer that, under *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a limited construction of Title III may be necessary to avoid a constitutional issue. Court's Opinion, *supra* at 1019. If *NBC* can be

with the philosophies expressed by the majority is unimportant. What is important is that the opinion implements policy decisions not within the powers delegated to this court.

In analyzing the court's approach, I examine the general rules of law dealing with evidentiary exclusions. I also look to accepted tools of statutory construction ordinarily employed by the federal courts.

There is no argument that the wiretaps at issue very likely contain information that may lead to evidence relevant to this civil RICO dispute. Thus, any construction of section 2517(3) and Title III that serves to obscure facts or hinder their discovery is contrary to long accepted policy formulations. The Supreme Court stated in *Trammel v. United States*, that:

> [t]estimonial exclusionary rules and privileges contravene the fundamental principle that "the public ... has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331[, 70 S.Ct. 724, 730, 94 L.Ed. 884] (1950). As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting).

*Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980).

The Supreme Court also looked at limitations on evidence gathering in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and concluded that "[w]hatever their origins [constitutional, statutory, or common law], these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of

the search for truth." *Id.* at 710, 94 S.Ct. at 3108.

Perhaps more to the point in light of the court's discussion of the legislative findings of Title III is the idea that federal courts will not create an evidentiary roadblock where Congress has debated the issue but failed to specifically provide one itself. In *University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), the Court stated that "[w]e are especially reluctant to recognize a[n] [evidentiary] privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id.* at 189, 110 S.Ct. at 582. "The balancing of conflicting interests of this type is particularly a legislative function." *Id.* The Court refused to create a privilege to protect from discovery the peer review process of universities. The Court relied on the fact that the exemption for educational institutions' employment decisions contained in Title VII when originally enacted in 1964 was eliminated by section 3 of the Equal Employment Opportunity Act of 1972. The Court found that section 3 evidenced Congress' considered judgment after debating the issues and that the Court should not suggest that Congress was oblivious to concerns of academic autonomy when it abandoned the exemption. *Id.* at 190, 110 S.Ct. at 582. A similar situation exists in this case with amended language of Title III having been adopted in conjunction with new RICO enactments. The proper analysis and interplay of these amendments was discussed in the panel opinion.

With a wave of its judicial wand, the court makes this well established policy disappear. This action seems to be based upon the notion that the court must protect "conversational privacy." Pronouncements that create "a sweeping exclusionary rule," Court's Opinion, *supra* at 1018, and require

read for the proposition that *Katz* requires a limiting interpretation of Title III, it is wrong. The *NBC* panel says, "[w]e start from the proposition that use of evidence obtained by wiretapping was broadly banned by *Katz*." *NBC*, 735 F.2d at 53. No such proposition appears in *Katz*. The case applied Fourth Amendment protections to electronic eavesdropping. This resulted in the enactment of Title III. Likewise, nothing in *Katz* prohibits the fruits of a lawful Fourth Amendment search and seizure from being used in civil litigation and it is not evident that any such prohibition exists in the Fourth Amendment or in federal law.

"greater clarity on the part of Congress," *id.*, before wiretap materials may be unsealed for private use are not, however, supported by the language or the history of the wiretap act.

The court contends that section 2515 changes the usual axiom that evidence *is* available unless specifically protected by a rule of exclusion to a contrary rule that states that wiretap material *is not* available unless its use is explicitly and specifically authorized by section 2517. This analysis not only misreads section 2515 but also ignores, as I will later show, more important policy decisions underlying the Act. Once you have moved past the exclusionary rule in section 2515 to the "disclosure and use" rules of section 2517, there is no reason not to apply the teachings of *Trammel, Nixon,* and *EEOC.*

In addition to casting a blind eye toward this policy, the court has ignored the usual tools of statutory construction. Of the argument that the words of section 2517(3) provide for the requested disclosure, the court says: "this 'argument based on the language of section 2517(3) has a surface plausibility, but only if one *concentrates on the language alone* and ignores the rest of Title III and the legislative struggle leading to its enactment.'" Court's Opinion, *supra* at 1017 (quoting *NBC,* 735 F.2d at 53). Of course, our cases require concentration on the language of a statute. This circuit has said that "the language of the statute itself must ordinarily be regarded as conclusive. Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete." *In re Erickson Partnership,* 856 F.2d 1068, 1070 (8th Cir.1988) (citations omitted).

I concede that ascertainment of the plain meaning of the statute may require a look at the particular language at issue, here section 2517(3), in conjunction with the language and design of the statute as a whole. *See Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988). Even taking the court's look at the "rest of Title III," it is difficult to see the need to go beyond the words of the subsection. Assuming, however, for the purpose of fair consideration of the court's position that there is statutory ambiguity, the interpretation still fails.

The court contends that the language of the statute as a whole leads to the conclusion that section 2517(3) precludes the discovery sought by Smith. It relies upon irrelevant portions of Title III as a basis for this argument. It cites Justice Brandeis' dissent in *Olmstead v. United States* for the proposition that Title III was enacted to protect privacy in the use of telephone lines:

> Whenever a telephone line is tapped, the privacy of the persons at both ends of the line is invaded and all conversations between them upon any subject, and although proper, confidential and privileged, may be overheard. Moreover, the tapping of one man's telephone line involves the tapping of the telephone of every other person whom he may call, or who may call him.

*Olmstead v. United States,* 277 U.S. 438, 475–76, 48 S.Ct. 564, 571, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). The court then cites a purported finding of Congress as follows:

> To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of crime with assurances that the interception is justified and that the information obtained thereby will not be misused.

Title III—Wiretapping and Electronic Surveillance: Findings, Pub.L. 90–351, § 801(d), 82 Stat. 211, 211 (1968).

While these findings may underscore the need for the wiretap procedures required by Title III, they have little to do with this case. Congress was more concerned in 1968 about who was engaging in wiretaps

than about the fruits of lawfully conducted interceptions. *See* S.Rep. No. 1097, 90th Cong., 2d Sess. 66, *reprinted in* 1968 U.S.C.C.A.N. 2154. Individuals have an important privacy interest in not being the subject of a wiretap investigation at all unless certain requirements are met. Congress provided strict up-front protections against unwarranted or improper wiretaps.[2] After an individual's original privacy interest has been overridden and a wiretap has been conducted pursuant to the requirements of Title III, the individual's interest in preventing use of the wiretap in civil litigation is less compelling. Congress intended to protect the innocent, not to place privacy concerns above the search for truth. That explains why in section 2517 Congress permitted use of wiretap evidence through testimony given under oath in a "proceeding held under the authority of the United States or of any State or political subdivision," subsection (3), after approval of its use "by a judge of competent jurisdiction," subsection (5).

There is no dispute about the propriety of the wiretaps involving Lipton and the Webbes. They were fully within the requirements of Title III. *See* Court's Opinion, *supra* at 1016 n. 1. The court so far misplaces Congress' concerns about individual privacy that its decision does violence to the language of the statute.

Another shortcoming in the court's use of Title III findings is dramatized by our holding in *In re Prines*, 867 F.2d 478 (8th Cir.1989). In *Prines*, preamble language inconsistent with amended language of the Act was disregarded because, as here, the preamble dealt with an earlier version of the law. The congressional findings the court relies on to support its inference that privacy interests confine wiretap evidence to use by the government in civil actions

were made two years before Congress enacted the public law which both amended section 2517(3) to delete "any criminal proceeding" and provided for private civil RICO remedies. In 1970, Congress was concerned with giving private litigants who were injured by RICO violations the necessary tools to recompense their injuries. Congress directed the courts that RICO "shall be liberally construed to effectuate its remedial purposes." Pub.L. 91–452, § 904(a), 84 Stat. 947 (1970). The Supreme Court has recognized that "if Congress' liberal-construction mandate is to be applied anywhere, it is in § 1964 [the private attorneys general provision], where RICO's remedial purposes are most evident."[3] *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 492 n. 10, 105 S.Ct. 3275, 3283 n. 10, 87 L.Ed.2d 346 (1985). It is clearly inappropriate to import general expressions of legislative intent in 1968 into an analysis of the amended language of section 2517(3) contained in the 1970 public law that created RICO.

When amended section 2517 is properly analyzed in conjunction with contemporary RICO legislation, as was done in the panel opinion, it is clear that "giving testimony ... in any proceeding held under the authority of the United States or of any State or political subdivision," section 2517(3), includes giving testimony at a deposition proceeding in a private civil RICO case in federal or state court, especially if a witness appears before the designated officer pursuant to subpoena and the wiretap material is produced through a subpoena duces tecum. The court grudgingly concedes the possibility that subsection (3) requirements may be met through testimony in open court, but never in a pretrial proceeding. Words in support of such an analysis simply cannot be found in the Act or in its legislative history.[4]

---

2. The procedures for conducting authorized wiretaps are found in 18 U.S.C. § 2518.

3. The author of the court's opinion cites these concepts with approval in his recent dissent in *Bowman v. Western Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir., 1993).

4. The language of section 2515 destroys the court's contention that "a proceeding held under

the authority of the United States or [a] State" does not include pretrial discovery proceedings. Section 2515, as adopted in 1968, refers to receiving evidence "in any trial, hearing, or other proceeding *in or before* any court." 18 U.S.C. § 2515 (emphasis added). This wording better supports the court's argument with regard to proceedings in "open court" being contemplated by the Act. It is wrong to assume, however, that

What the court omits in its discussion is that even in 1968, before Title III was amended, the Senate made it clear that "[t]he major purpose of Title III [was] to combat organized crime." S.Rep. No. 1097, 90th Cong., 2d Sess. 66 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2157.

Congress expanded on this theme when it authorized private civil RICO actions as a way to combat organized crime. The court attempts to blur this issue by reading into section 2517(3) limitations contained only within 2517(5). The court simply misstates Smith's argument when it contends that Smith relies on subsection (5) and thus carries into subsection (3) a use limited to criminal offenses. Court's Opinion, *supra* at 1017. It cannot be rationally argued that the amended language of the Act limits subsection (3) evidence to criminal proceedings.

After making this narrowing inference, the court then backs away and concedes that wiretap evidence may be used in civil proceedings—but only in very limited instances. Court's Opinion, *supra* at 1017. The court's interpretation restricts the use of wiretap evidence in civil cases, if it can be used at all, to only those actions in which the federal government, a state, or a political subdivision of the state is a party. The language and the legislative history of the Act, as amended, contain no such qualification. Indeed, the words used by Congress are designed to make certain that all civil RICO actions are included.

Civil RICO complaints, including private complaints, find venue in both federal and state courts. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). Accordingly, subsection (3) speaks to "any proceeding held under the authority of the *United States or of any State or political subdivision*." 18 U.S.C. § 2517(3) (emphasis added). This language is modified by the need for approval for use by "a judge of competent jurisdiction." Subsection (5). Obviously, under the law, even a state court judge to whom a private civil RICO case has been assigned may authorize the use of wiretap materials in "any proceeding" held under the authority of the laws of his or her state. Had Congress intended to limit the use to a "trial" or a "hearing" or a "proceeding" involving only a governmental party, it could have used such limiting words. The court seeks to put in place, erroneously, an evidentiary roadblock that is not warranted by the language or structure of the statute.

At oral argument en banc, Smith reemphasized that the Justice Department and the United States Attorney for the Eastern District of Missouri have both "stated that they have no objection to the release of the requested portions of the tapes." Appellant's Supp. Brief at 4. The court neatly overstates Smith's argument and then knocks down the overblown proposition. Properly analyzed, the claim, while not dispositive of the issues in this case, is helpful to a fair interpretation of the statute.

As authorized by statute, the Department of Justice has promulgated rules with regard to production or disclosure of material contained in the files of the Department. 28 C.F.R. §§ 16.21–16.29. There is no dispute that the wiretap materials at issue are in Department files. Under 28 C.F.R. § 16.26, the appropriate Department official and United States Attorney are required, in deciding to approve disclosure, to evaluate "[w]hether disclosure is appropriate under the relevant substantive law concerning privilege." Obviously, the Department has interpreted section 2517 and Title III as permitting disclosure of the Lipton–Webbe tapes to private litigants and has given its approval. The court, without addressing this departmental interpretation, simply finds "that Title III does not grant the government ... authority [under section 2517(3) ]" to determine whether private litigants may have access to this kind of file material. Court's Opinion, *supra* at 8. Of course it doesn't. A court will ultimately make that decision. But the Justice Department's interpretation of its own reg-

---

Congress wished to impose or to continue an "in or before" posture through amended section 2517(3) when it purposely used much broader language in its 1970 amendment to the subsection.

ulations and the statute it administers must be accepted unless it is plainly unreasonable. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). To apply its particular gloss to the statute, the court has already had to find section 2517(3) ambiguous. Thus, under *Chevron*, the Court has limited authority to superimpose its own construction of section 2517(3) (precluding release of the tapes to a private litigant) on the Department if the Department's construction (permitting release to private litigants) is a reasonable interpretation of the statute. The court points to nothing except its own perception of a socially correct public policy in finding the Justice Department interpretation unreasonable. Let it be understood, however, that the Department does not, alone, make the decision to release the material. As earlier noted, section 2517 clearly makes use of subsection (3) evidence contingent upon approval "by a judge of competent jurisdiction." Section 2517(5).

Finally, I have searched in vain for reasoned precedent holding that legislative construction should be bottomed upon "the legislative struggle leading to its enactment." *NBC*, 735 F.2d at 53. Such information is simply irrelevant unless it appears in genuine legislative history looked to for resolution of an ambiguity in a statute. There is often fierce debate over the wisdom of controversial policy ideas. When legislation is adopted, the fight is over and the memory of these battles adds little to statutory interpretation. In any event, the legislative struggle referred to in *NBC* and mentioned in the court's opinion refers to "a long battle between those who would have altogether prohibited wiretaps and the material obtained thereby and those who wanted to allow the government to use wiretap material in criminal prosecutions." *Id.* The "altogether prohibit[ors]" lost and Congress, of course, adopted legislation permitting wiretaps. Then, in 1970, Congress broadened the use of wiretap materials to include civil litigation. Thus, the "legislative struggle" referred to by the court adds nothing to our interpretive task in this case.

The court reaches the wrong result. The district court should be reversed and the case remanded for consideration of those matters required by the vacated panel opinion.