In re UNCLE BUD'S INC., et al, Debtors.

### In re LIGONIER POWDERS, INC., Debtor.

### In re CREEKSTONE APARTMENTS ASSOCIATES, L.P., Debtor.

### In re Milton and Jessie WOODS, Debtors.

**Bankruptcy Nos. 95–01239–GP3–11, 91–06383–GP3–11, 92–04511–GP3–11 and 91–00551–KL3–11.**

United States Bankruptcy Court, M.D. Tennessee.

Feb. 19, 1997.

Linda W. Knight, Gullett Sanford Robinson & Martin, Nashville, TN, for The Debtor in Uncle Bud's, Inc., et al., The Unsecured Creditor's Committee In Ligonier Powders, Inc., The Debtor in Creekstone Apartments Associates, L.P., Gullett Sanford Robinson & Martin, P.L.L.C., amicus curiae in Milton and Jessie Woods.

Beth Roberts Derrick, Barbara D. Holmes, United States Trustee's Office, Nashville, TN, for The United States trustee.

Edwin M. Walker, Garfinkle McLemore & Walker, Nashville, TN, for John C. McLemore, Liquidating Agent in Ligonier Powder, Inc.

B. Gail Reese, Manier Herod Hollabaugh & Smith, P.C., Nashville, TN, for The Debtors in Milton and Jessie Woods.

## MEMORANDUM OPINION

GEORGE C. PAINE, II, Chief Judge.

The U.S. Trustee has filed objections to final reports filed by several debtors. The issue presented is the validity of the January 26, 1996 and September 30, 1996 amendments to 28 U.S.C. § 1930(a)(6), as applied to Chapter 11 cases in which plans were confirmed prior to January 26, 1996.

In the context of cases with plans confirmed prior to January 26, 1996, the amendments shall apply only if the confirmed plans explicitly provided for payment of post-confirmation quarterly fees to the U.S. Trustee. Because none of the confirmed plans have such a provision, the U.S. Trustee's objections to the final reports are overruled.

Various briefs have been filed and/or adopted by the U.S. Trustee, debtors, an unsecured creditors' committee, and amicus parties. An amicus brief was submitted by Lassiter, Tidwell & Hildebrand, a law firm representing various debtors with confirmed Chapter 11 plans. The unsecured creditors' committee and the liquidating agent in *Ligonier*, and the amicus parties, are aligned with the debtors. For ease of reference in this memorandum, the court will refer to all parties opposing the U.S. Trustee as the debtors.

The following are the court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052 and 9014. This court has jurisdiction in these proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These are core proceedings as defined in 28 U.S.C. § 157(b)(2).

## I. FACTS

### Uncle Bud's Inc.

The debtor, Uncle Bud's Inc., filed a Chapter 11 petition on February 23, 1995. Two related companies, Stewart's Ferry Joint Venture (Bk. No. 95–01871–GP3–11) and Uncle Bud's of Franklin, Inc. (Bk. No. 95–01872–GP3–11), filed Chapter 11 petitions on March 20, 1995. The three cases were consolidated for joint administration on June 9, 1995. (Stipulations of Facts and Admissibility of Exhibits in Connection With U.S. Trustee's Objections to Debtors' Final Accountings and Motions for Final Decrees, filed in *Uncle Buds, Inc. et al* and received in court on September 24, 1996, at ¶ 1) (hereinafter "Consolidated Stipulations).[1]

On August 31, 1995, the court entered an order confirming a consolidated Chapter 11 plan in this small business case. (Consolidated Stipulations ¶¶ 1–2). The plan provided for payment of all claims in full, primarily from operating revenue and additional post-confirmation capital contributions. Generally, the plan provided for amortization of secured debt and installment payments under promissory notes issued to unsecured creditors. (Consolidated Stipulations ¶ 2). The debtor's plan provides for continuing jurisdiction of the Court to include:

Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

. . . . .

Entry of a final decree closing the Case.

---

1. Separate stipulations of fact were filed in the *Woods* case.

(Docket Entry (hereinafter "D.E.") 97, Plan, Article XI, ¶¶ (4) and (7)).

Regarding quarterly fees owed to the U.S. Trustee, the plan provides: "All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation, shall be paid in full in cash on the Effective Date of the Plan." (D.E. 97, Plan, Article VII, ¶ 4). The Effective Date was defined generally as the first business day after the 45th day after confirmation. (Id., Plan, Article I, ¶ (13)). The plan has no provision for payment of *post-confirmation* quarterly fees to the U.S. Trustee. The U.S. Trustee did not object to the absence of such a provision.

The debtors filed a Final Report and Motion for Final Decree on April 15, 1996. (D.E. 121). The U.S. Trustee filed an objection on the basis that the Final Report and Motion for Final Decree did not provide for payment of any post-confirmation fees. (D.E. 124).

According to the Final Report filed by the debtors in the consolidated *Uncle Buds* cases, the claims administration process is complete. All payments under the plan have commenced and are current. (Consolidated Stipulations ¶ 3). The debtors did not file any post-confirmation reports. (Consolidated Stipulations ¶ 4). Each debtor in the *Uncle Buds* cases paid quarterly fees for the first quarter of 1996 in the amount of $250.00. No other fees were paid and the Final Report and Motion for Final decree filed in the jointly administered cases did not provide for payment of any additional fees. (Consolidated Stipulations ¶ 5).

**Ligonier Powders, Inc.**

The debtor, Ligonier Powders, Inc., filed a Chapter 11 petition on July 1, 1991. On March 2, 1992, the court entered an order confirming a liquidating Chapter 11 plan. (Consolidated Stipulations ¶ 6). The plan was proposed by a creditor and parent corporation to a potential purchaser. (D.E. 159, Plan p. 1). The debtor's assets were purchased by an outside entity and the proceeds were distributed by a liquidating agent. (Consolidated Stipulations ¶ 6).

The liquidating plan generally provided for payment in full by the effective date of ad-

ministrative claims, post-petition trade debt and employee claims, and tax claims. Secured creditors were paid the value of their collateral, either in periodic installments by the purchasers or in a lump sum on the effective date. The plan was amended by court order entered on December 1, 1992 to establish a claims administration process. (Consolidated Stipulations ¶ 7). The debtor's plan provides for continuing jurisdiction of the Court until substantial consummation of the Plan or until such time as necessary to adjudicate certain specified matters or proceedings. (D.E. 159, Plan, Article VI, p. 1). The retained jurisdiction included:

(K) The enforcement and interpretation of the terms and conditions of the Plan;

. . . . .

(M) Entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtor (including any successor, and including the Liquidating Agent), Proponent, Newco or such order necessary or appropriate to the administration of this case;

. . . . .

(O) Entry of an order concluding and terminating this case.

(D.E. 159, Plan, Article VII, p. 12).

The plan provided for payment in full of quarterly fees owed to the U.S. Trustee:

[Class 1 claims, which included the § 1930 quarterly fees] shall be fully paid by the Liquidating Agent within ten (10) business days of the latter [sic—should read later] of: (i) the entry and finality of an Order of the Court allowing such claim; or (ii) the Effective Date, or as otherwise deferred by agreement with the holder of such Claim, whichever is later.

(D.E. 159, Plan, Article III, Class 1). The effective date was defined essentially as 30 days after confirmation. (Id., Plan, Article I, p. 3). The plan has no explicit provision for payment of *post-confirmation* quarterly fees to the U.S. Trustee. The U.S. Trustee did not object to the absence of such a provision.

The liquidating agent made a distribution to unsecured claimants of approximately 8.85% on July 7, 1994 (with the exception of

three creditors who received distributions on January 13, 1995 due to address changes). The liquidating agent filed periodic post-confirmation reports in 1992 and 1993. The U.S. Trustee monitored the liquidating agent's cash on hand for bonding purposes throughout the time the liquidating agent was holding funds. (Consolidated Stipulations ¶ 8).

The liquidating agent filed a Final Accounting of Liquidating Agent, John C. McLemore on April 1, 1996 and an Amended Final Accounting on May 3, 1996. (D.E. 236, 240). Prior to these filings, the last activity in the case was reissuance of distribution checks in January 1995. The liquidating agent has had no funds on hand since January 1995. (Consolidated Stipulations ¶ 9). No post-confirmation fees were paid or provided for in the Final Accounting or the Amended Final Accounting. (Consolidated Stipulations ¶ 10).

The U.S. Trustee filed an objection on the basis that the Final Accounting did not provide for payment of post-confirmation quarterly fees.[2] (D.E. 237). In the Liquidating Agent's Response to Objection of the U.S. Trustee to Final Accounting filed May 3, 1996, the liquidating agent stated there were no funds available and that, at the time the court approved the liquidating agent's distributions, there was no Bankruptcy Code provision for payment of post-confirmation quarterly fees and therefore the payment of post-confirmation quarterly fees was not budgeted. (D.E. 241). The Unsecured Creditors' Committee also filed a response to the U.S. Trustee's objection. (D.E. 239).

### Creekstone Apartments Associates, L.P.

The debtor, Creekstone Apartments Associates, L.P., filed a Chapter 11 petition on May 20, 1992. The debtor's disclosure statement was approved in December 1992. After extensive and protracted litigation, the debtor's plan was confirmed by memorandum opinion and order entered on January 20, 1995.[3] The effective date of the plan was March 7, 1995, and performance of the plan commenced at that time. (Consolidated Stipulations ¶ 11).

The plan provides: "All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation, shall be paid in full in cash on the Effective Date of the Plan." (D.E. 409, Plan, Article VI, ¶ 5). The Effective Date was defined generally as the first business day after 45 days after confirmation. (Id., Plan, Article I, ¶ (13)). The plan has no explicit provision for payment of *post-confirmation* quarterly fees to the U.S. Trustee. The U.S. Trustee did not object to the absence of such a provision.

The debtor's plan provides for continuing jurisdiction of the Court to include:

Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

. . . . .

Entry of a final decree closing the Case. (Id., Plan, Article X, ¶¶ (4) and (7)).

Appeals and motions proceeded post-confirmation in district court and in the Sixth Circuit Court of Appeals, with the U.S. Trustee actively participating in the post-confirmation litigation. (Consolidated Stipulations ¶ 12). On February 28, 1996, the debtor filed its Seventh Amendment to the Chapter 11 Plan reflecting an agreement with a primary creditor. (Consolidated Stipulations ¶ 13). Other than the claim of this primary creditor, all other claimants were paid according to the terms of the confirmed plan between January 1995 and March 1996. (Consolidated Stipulations ¶ 14).

On April 3, 1996 the court entered an order confirming the seventh amended plan. Counsel for the debtor and the U.S. Trustee agreed that "should the Court find that post-petition fees are required in cases with already confirmed plans, the language of the debtor's original plan (which was unaffected

---

**2.** Other grounds for objection were apparently resolved by the agent's Amended Final Accounting.

**3.** The order was entered on January 25, 1995, nunc pro tunc to January 20, 1995. (D.E. 507).

by later amendments) was sufficiently broad to include post-confirmation fees, and that neither party was prejudiced with respect to its right to litigate whether or not such fees could be imposed." (Consolidated Stipulations ¶ 15).

The debtor filed one post-confirmation report on April 14, 1995. It paid quarterly fees to the U.S. Trustee for the first quarter of 1996 in the amount of $250.00. No other fees have been paid to the U.S. Trustee post-confirmation. (Consolidated Stipulations ¶ 16).

The debtor filed a Final Report and Application for Final Decree Closing Case on July 10, 1996. (D.E. 623). Paragraph 20 of the Final Report states, "In addition, all lawful fees paid to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, as determined by the Court, have been paid, and will be paid as directed by the Court." (Id., Final Report at ¶ 20; Consolidated Stipulations ¶ 17). The U.S. Trustee filed an objection on the basis that the Final Report and Motion for Final Decree did not provide for payment of any post-confirmation fees. (D.E. 626).

### Milton David Woods and Jessie Dean Woods

The debtors, Milton David Woods and Jessie Dean Woods, filed a Chapter 11 petition on January 18, 1991. On May 9, 1991 the debtors filed a plan of reorganization which was amended on August 1, 1991. (D.E. 72, Stipulated Facts filed Sept. 6, 1996 in the *Woods* case at ¶ 1–2) (hereinafter "Woods Stipulations").

On July 23, 1991, the court entered an agreed order resolving the U.S. Trustee's objection to the debtors' disclosure statement. The agreed order provided "quarterly fees due and payable to the Office of the United States Trustee under 28 U.S.C. § 1930 shall be paid in full on or about the effective date of Plan confirmation with cash on hand." (Woods Stipulations ¶ 4). The plan was confirmed on September 23, 1991. (D.E. 43). Under the plan, the effective date was the date the order confirming the plan became final and not appealable, which would have been October 4, 1991. (D.E. 26, Plan p. 1–2 ¶ 7). The debtor's plan provides for

continuing jurisdiction of the Court to include: "only such jurisdiction as is expressly mandated by the Bankruptcy Reform Act of 1978 and the Bankruptcy Amendments in Federal Judgeship Act of 1984." (D.E. 26, Plan p. 7).

The debtor's plan has no provision for payment of *post-confirmation* quarterly fees to the U.S. Trustee. The U.S. Trustee did not object to the absence of such a provision.

Except for a 12 year continuing obligation to First American National Bank, the debtors completed all plan payments by the end of 1992. The debtors currently pay $649.00 per month to the bank. (Woods Stipulations ¶ 5).

The debtors filed a Final Report and Motion for a Final Decree Closing the Case on May 1, 1996. (D.E. 62). The U.S. Trustee filed a timely objection to the Motion. (Woods Stipulations). The U.S. Trustee objected on the basis that the Final Report and Motion for Final Decree did not provide for payment of any post-confirmation fees. (D.E. 64).

On April 8, 1996, the Assistant U.S. Trustee for Region VIII issued a Memorandum with respect to an amendment effective January 27, 1996 to 28 U.S.C. § 1930. (Woods Stipulations). A copy of the memorandum is attached as an exhibit to the stipulations. (Woods Stipulations, Exhibit D).

As of March 1991, the debtors' gross income was $1,940.00 per month. (D.E. 20, Schedule of Current Income and Expenditures). They anticipated additional income of $7,000.00 that year. (Id.). Their past income was modest: approximately $35,-400.00 per year for 1989 and 1990 (D.E. 4, Statement of Financial Affairs for a Debtor engaged in Business, response to Question # 5)

The only debt which has been paid since January 27, 1996 that is covered by the Chapter 11 plan is the debt of $649.00 per month to First American Bank. The debtors have not exceeded the minimum disbursement amount of $0 to $14,999.99 for any quarter since January 27, 1996. (Woods Stipulations ¶ 9).

**Evidence presented at hearing**

At the hearing on the U.S. Trustee's objections to the Final Accountings, the parties in *Uncle Buds et al, Creekstone,* and *Ligonier* submitted 14 exhibits into evidence as well as stipulations of fact. Admissibility of the exhibits was stipulated by the parties. (Consolidated Stipulations at p. 5–7). Four stipulated exhibits were submitted in the *Woods* case. (Woods Stipulations, Exhibits A–D).

The U.S. Trustee presented evidence that there are 241 pending Chapter 11 cases in this district where a plan has been confirmed with no final decree entered.[4] There are 135 pending Chapter 11 cases without confirmed plans. With respect to cases with confirmed plans, the duties of the U.S. Trustee include monitoring the cases, seeking timely reports from debtors (within the U.S. Trustee's budget constraints), and reviewing Final Accountings. In all Chapter 11 cases, the U.S. Trustee reviews pleadings and takes positions in court. The U.S. Trustee also monitors bonding and collateral requirements.

Regarding the debtors' arguments about cases closed administratively by the court and cases closed via the final accounting process,[5] the U.S. Trustee asserted she did not intend to make a distinction between the two types of case closings in connection with the term "closed" in its handout materials for debtors.[6]

## II. ISSUES

The debtors raised the following issues:

1. Whether the January 1996 amendment to 28 U.S.C. § 1930 is not actually in effect.

2. Whether amended § 1930, when applied to cases with plans confirmed before enactment, is an unconstitutional denial of due process of law.

3. Whether amended § 1930 is an unconstitutional violation of the separation of powers.

4. Whether amended § 1930 is so vague that it is unenforceable.

The U.S. Trustee argued that a number of issues of interpretation are not before the court since the U.S. Trustee has not filed any motions to compel payment of post-confirmation quarterly fees. According to the U.S. Trustee, it is not necessary at this time to determine when a case is "closed," what "disbursement" means post-confirmation, or who must pay a post-confirmation quarterly fee.

## III. DISCUSSION

**A. The January amendment to 28 U.S.C. § 1930(a)(6) did take effect.**

Prior to its January 26, 1996 amendment, 28 U.S.C. § 1930(a)(6) provided:

Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this title, the following filing fees:

. . . .

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed. . . .

28 U.S.C. § 1930(a)(6) (1995). After the January 1996 amendment, § 1930(a)(6) provided:

Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to sec-

---

**4.** Presumably most of these cases involve plans confirmed prior to the January 26, 1996 change in the quarterly fee statute. Also, the cases involve corporations, as well as partnerships and ·individuals.

**5.** *See* Memorandum filed August 23, 1996 in *Uncle Bud's* case at page 11.

**6.** The handout, attached as Exhibit D to the Woods Stipulations, contains the U.S. Trustee's interpretation of what debtors should do about post-confirmation quarterly fees.

tion 156(b) of this title, the following filing fees:

. . . .

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until **[a plan is confirmed or]** the case is converted or dismissed. . . .

28 U.S.C. § 1930(a)(6) (language deleted by the January 1996 amendment indicated by bold print and brackets).

The January 1996 amendment was part of a budget bill. Although normally an amendment to Title 28 of the U.S. Code would be carefully considered in congressional committee hearings, apparently no hearings were conducted on the amendment's wording. Congressional hearings undoubtedly would have generated comment on the irrational wording of the amended statute in the context of other provisions of the Bankruptcy Code. Thoughtful consideration of the proposed statute would have included discussion of issues of constitutionality, res judicata problems, and the limits of Bankruptcy Court jurisdiction in the post-confirmation phase of a Chapter 11 case.

The debtors argue that the January 26, 1996 amendment to 28 U.S.C. § 1930 did not take effect on three grounds, all of which are rejected by the court. First, the debtors argue that collection of post-confirmation quarterly fees is a "new" activity not permitted under the appropriations act containing the amendment to § 1930. Second, the debtors argue that the amendment expired on April 25, 1996 due to a sunset provision enacted in P.L. 104–99 by Congress. Third, the debtors argue that P.L. 104–91 did not go into effect until September 30, 1996.

7. *See* H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17, 1995 WL 432338 (Leg.Hist.) at 34 (1995) (recognizing need to adequately fund administration of pending chapter 11 caseload of Office of U.S. Trustee)

8. Section 106 provides:
Unless otherwise provided for in this title of this Act or in the applicable appropriations Act, appropriations and funds made available and authority granted pursuant to this title of

The history of passage of the January 26, 1996 amendment to 28 U.S.C. § 1930(a)(6) is convoluted. Addressing a need to increase revenues for the Office of the U.S. Trustee,[7] Congress passed an amendment to 28 U.S.C. § 1930(a)(6). Initially Congress passed H.R. 2076, but the president vetoed it in December 1995. 141 Cong.Rec. D1491–01. Section 111(a) of the conference report on H.R. 2076 provided:

(a) Section 1930(a)(6) of title 28, United States Code, is amended by striking "a plan is confirmed or". . . .

H.R.Conf.Rep. No. 104–378 (December 1, 1995).

Congress passed a continuing resolution, P.L. 104–91, on January 6, 1996. At the time of its original passage, it did not contain an amendment to § 1930. It contained a September 1996 "sunset" provision. P.L. 104–91, Title I, § 106 (1996).[8] It also contained certain language regarding limitations to activities conducted in fiscal year 1995 and limitations on appropriations and funds made available, which the debtors rely on to argue that nothing that is a "new activity" by the U.S. Trustee is permitted under the statute. P.L. 104–91, Title I, §§ 101 and 103 (1996). The court rejects the debtors' argument.

█ It is true that Congress made it clear that it was appropriating funds for the Department of Justice ". . . for continuing . . . projects or activities . . . which were conducted in the fiscal year 1995 . . ." P.L. 104–91, Title I, § 101(a), 110 Stat. 7, 10 (1996). "No appropriation or funds made available or authority granted pursuant to section 101 shall be used to initiate or resume any project or activity for which appropriations, funds, or other authority were not available during the fiscal year 1995." P.L. 104–91, Title I, § 103, 110 Stat. 7, 13 (1996). It is also true that

this Act shall be available until (a) enactment into law of an appropriation for any project or activity provided for in this title of this Act, or (b) the enactment into law of the applicable appropriations act by both Houses without any provision for such project or activity, or (c) September 30, 1996, whichever first occurs. P.L. 104–91, Title I, § 106, 110 Stat. 7, 14 (1996).

collection of *post-confirmation* quarterly fees was not an activity of the U.S. Trustee in 1995. However, the purpose of the congressional limitation was to prohibit expenditures (such as hiring personnel, replacing computers, etc.) unless otherwise authorized in fiscal year 1995. The amendment to § 1930(a)(6) does not authorize expenditures and instead provides for collection of quarterly fees for deposit into the United States Trustee System Fund, pursuant to 28 U.S.C. § 589a. Second, although P.L. 104–91, Title I, §§ 101(a) and 103 limit *activities* in addition to expenditures, the U.S. Trustee was already authorized during fiscal year 1995 to take "such action as the United States trustee deems to be appropriate to ensure that ... fees required to be filed under title 11 and [title 28] by the debtor are properly and timely filed." 28 U.S.C. § 586(a)(3)(D). The court therefore rejects the debtors' first argument.

On January 26, 1996 Congress passed P.L. 104–99. Title II, Section 211 provided that, with an exception not relevant here, "the General Provisions for the Department of Justice included in title I of the aforementioned conference report are hereby enacted into law." P.L. 104–99, Title II, § 211, 110 Stat. 26, 38 (1996). The conference report referred to is H.R.Conf.Rep. No. 104–378 (December 1, 1995), the conference report on H.R. 2076.[9] Therefore, the amendment to 28 U.S.C. § 1930(a)(6) was enacted into law.

P.L. 104–99 contained a sunset provision:

Unless otherwise provided for in this title of this Act or in the applicable appropriations Act, appropriations and funds made available and authority granted pursuant to this title of this Act shall be available until (a) the enactment into law of an appropriation for any project or activity provided for in this title of this Act, or (b) the enactment into law of the applicable appropriations Act by both Houses without any provision for such project or activity, or (c) March 15, 1996, whichever first occurs.

P.L. 104–99, Title II, § 202, 110 Stat. 26, 36 (1996). This sunset date was eventually extended to April 25, 1996. P.L. 104–116; P.L. 104–118; P.L. 104–122; P.L. 104–131.

Congress ultimately passed a permanent 1996 budget. P.L. 104–134, 110 Stat. 1321 (1996). Title VI, § 616 provides:

Notwithstanding section 106 of Public Law 104–91, the general provisions for the Department of Justice that were included in the conference report to accompany H.R. 2076 and were identified in the amendment to Public Law 104–91 made by section 211 of Public Law 104–99 shall continue to remain in effect as enacted into law.

P.L. 104–134, Title VI, § 616, 110 Stat. 1321, 1321–65 (1996).

■ The debtors argue that Congress failed to extend the sunset provision of P.L. 104–99 which expired on April 25, 1996. However, any failure to extend P.L. 104–99 beyond April 25, 1996 is not relevant. The amendment to 28 U.S.C. § 1930(a)(6) was a change in the law on quarterly fees *collected* by the U.S. Trustee. The April sunset provision only applied to certain "appropriations and funds made available and authority granted pursuant to this title to this Act ..." P.L. 104–99, Title II, § 202, 110 Stat. 26, 36 (1996). The amendment to § 1930(a)(6) was not an appropriation. It was not a grant of authority or a provision making "funds ... available," within the meaning of P.L. 104–99, Title II, § 202.[10] P.L. 104–99's enactment of § 111(a) of H.R.Conf.Rep. No. 104–378 was not eliminated by virtue of P.L. 104–99's April sunset provision. P.L. 104–99, Title II, § 211 did accomplish amendment of 28 U.S.C. § 1930(a)(6). Thus, the court rejects the debtors' "sunset" argument.

■ The debtors rely on §§ 106(c) and 108 of P.L. 104–91 to argue that the amendment of § 1930(a)(6) could not take effect until September 30, 1996, the date set forth in § 106(c) of P.L. 104–91. Section 108 provides:

---

9. The conference report had been previously cited in P.L. 104–99. P.L. 104–99, Title II, § 201(a), 110 Stat. 26, 35 (1996).

10. As stated earlier in this opinion, the U.S. Trustee's authority to collect quarterly fees was already in place by virtue of 28 U.S.C. § 586(a)(3)(D).

No provision in the appropriations Act for the fiscal year 1996 referred to in section 101 of this Act that makes the availability of any appropriation provided therein dependent upon the enactment of additional authorizing or other legislation shall be effective before the date set forth in section 106(c) of this Act.

P.L. 104–91, Title I, § 108, 110 Stat. 7, 14 (1996). The date set forth in section 106(c) is September 30, 1996. P.L. 104–91, Title I, § 106(c), 110 Stat. 7, 14 (1996). The debtors claim that the additional funds contemplated by § 111 of H.R. 2076 depended on the amendment of 28 U.S.C. § 1930 and that, pursuant to P.L. 104–91, Title I, §§ 108 and 106(c), the amendment could not take effect until September 30, 1996. The debtors' argument is rejected for the reason that the quarterly fees were not an "appropriation provided" in the appropriations Act for fiscal year 1996 within the meaning of § 108. Rather, the amendment of 28 U.S.C. § 1930(a)(6) was a change in the law involving *collection* of fees for deposit into the United States Trustee Fund. Therefore, there was no delay in the effective date of the amendment to § 1930(a)(6).

**B. Amended 28 U.S.C. § 1930(a)(6) applies to cases with plans confirmed before the January 26, 1996 amendment, *provided* the confirmed plans included an explicit requirement for payment of post-confirmation quarterly fees.**

The courts addressing challenges to amended 28 U.S.C. § 1930(a)(6) are split. One court has held it lacked jurisdiction to enforce the U.S. Trustee's claim, assuming arguendo the validity of the U.S. Trustee's interpretation of amended § 1930. *Gryphon at the Stone Mansion, Inc. v. U.S. Trustee,* 204 B.R. 460 (Bankr.W.D.Penn.1997) (U.S. Trustee's claim for post-confirmation quarterly fees not enforceable in bankruptcy court in cases with plans confirmed before enactment and substantially consummated before enactment of January 1996 amendment to § 1930). Some courts have held the statute applies to Chapter 11 cases with plans confirmed prior to the January 26, 1996 amendment of § 1930(a)(6). *In re McLean*

*Square Assoc., G.P.,* 201 B.R. 436 (Bankr. E.D.Va.1996); *In re Foxcroft Square Co.,* 198 B.R. 99 (Bankr.E.D.Penn.1996); *In re Upton Printing,* 197 B.R. 616 (Bankr.E.D.La.1996); *In re Central Florida Electric, Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996). Other courts hold the amendment cannot apply to such cases. *In re Beechknoll Nursing Homes, Inc.,* 202 B.R. 260 (Bankr.S.D.Ohio 1996); *In re CF & I Fabricators of Utah, Inc.,* 199 B.R. 986 (Bankr.D.Utah 1996); *In re Hudson Oil Co., Inc.,* 200 B.R. 52 (Bankr.D.Kan.1996); *In re Precision Autocraft, Inc.,* 197 B.R. 901 (Bankr.W.D.Wash.1996). A fourth view is that, under the plain meaning of the statute, quarterly fees are to be paid only by debtors whose cases are converted or dismissed (not debtors with successful Chapter 11 plans). *In re C n' B of Florida, Inc.,* 198 B.R. 836 (Bankr.M.D.Fla.1996); *In re Boone,* 201 B.R. 499 (Bankr.W.D.Tenn.1996).

The question of whether Congress intended the statute to cover pending cases was addressed by passage of a second amendment by Congress on September 30, 1996. Public Law 104–208 provides in relevant part:

Section 101(a) of Public Law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting: ": Provided, further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans" after "enacted into law".

P.L. 104–208, Title III, § 109(d), 110 Stat. 3009 (1996). However, amended 28 U.S.C. § 1930(a)(6) still presents a number of problems.

■ As a general rule, courts should enforce a statute according to its terms. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 245, 109 S.Ct. 1026, 1032–33, 103 L.Ed.2d 290 (1989) (review of congressional intent unnecessary if statutory language clear and without significant conflicting state or federal interests); *Badaracco v. Commissioner,* 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984) (courts not allowed to

rewrite statute simply because statute needs improvement); *United States v. Jones*, 542 F.2d 661, 667 (6th Cir.1976) (presume Congress intended meaning expressed by clear language of statute). Also, "courts had better not depart from their [statutes'] words without strong support for the conviction that . . . they are doing what Congress wanted when they refuse to do what it said." *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1138 (2d Cir.1976).

■ The statute at issue is found in Title 28 of the U.S. Code and has a direct impact and relationship with the Bankruptcy Code. In the context of the detailed provisions of the Bankruptcy Code, judicial intervention to fill gaps is the exception rather than the rule. *See* Thomas G. Kelch, *An Apology for Plain–Meaning Interpretation of the Bankruptcy Code*, 10 Bankr.Dev.J. 289, 317–18 (1994). Kelch states:

Detailed and precise schemes are less likely to be ambiguous than those of a more general character. The more detail in a structure to be interpreted, the more suitable is plain-meaning analysis of the structure. The Bankruptcy Code, being a detailed structured whole, similar to other codes like the Uniform Commercial Code ("UCC") is subject to an interpretive mandate distinct from, for example, the interpretation of the common law. . . . A code, one intended to broadly administer conduct in a specified area, . . . is not typically designed with gaps for judicial assemblage. In this context of pervasive legislative pronouncement, active judicial intervention is dispensable due to the lack of gaps requiring judicial saturation through construction and non-linguistic interpretation. These characteristics of breadth of coverage, detail and precision describe the Bankruptcy Code.

. . . .

. . . Further, Congressional behavior of frequent revisions to the Code suggests that Congress intends to control the bankruptcy process through amendment rather than judicial fiat [unlike the Sherman Antitrust Act].

*Id.*

■ However, when there is a gap in a statute, courts must look beyond the words of the statute. Courts may look at the context of the statute—its structure, purpose, intent, and history. And "when conventional interpretation would produce absurdity or gross injustice, . . . when constitutional considerations counsel courts to interpret statutes in one direction—courts should be more aggressive in statutory interpretation." Cass R. Sunstein, *Interpreting Statutes in the Regulatory State*, 103 Harv.L.Rev. 405, 440–41 (1989).

Interpretation of statutes to avoid absurd results has a long tradition. The Supreme Court stated in *Sturges v. Crowninshield:*

Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe that framers of the instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application.

*Sturges v. Crowninshield*, 17 U.S. (4 Wheat) 122, 202–203, 4 L.Ed. 529 (1819). *See also Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1882) (use legislative history when statutory text leads to unintended results); *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) (refusing to follow words of statute when absurd or futile results reached).

Even Justice Scalia has recognized that when faced with an absurd statute, judges should not enforce the statute according to its literal, absurd terms. *See Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring opinion). Justice Scalia stated in *Bock Laundry*, "We are con-

fronted here with a statute which, if interpreted literally, produces an absurd and perhaps unconstitutional result. Our task is to give some alternative meaning to the word 'defendant' in Federal Rule of Evidence 609(a)(1) that avoids this consequence ..." *Id.* at 527, 109 S.Ct. at 1994. Justice Scalia argued that it is appropriate the consider legislative history and other public materials to confirm that Congress did *not* intend the interpretation of a statute that would result in absurdity. However, in his opinion, legislative history should not be used to determine what, in fact, Congress did mean. *Id.* at 527–28, 109 S.Ct. at 1994–95. Rather the court should consider available alternative interpretations and choose the one that "does least violence to the text." *Id.* at 529, 109 S.Ct. at 1995. It is also appropriate to consider the alternative interpretation in light of the policy of the law in general and (in the *Bock* case) the policy of the Rules of Evidence of providing special protection to defendants in criminal cases. *Id.* *See also* Veronica M. Dougherty, *Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation,* 44 Am.U.L.Rev. 127, 152 n. 114 (1994).

Congress has made it clear (in the September 1996 amendment to § 1930) that debtors with confirmed plans are to pay post-confirmation quarterly fees. However, Congress left intact the wording of § 1930(a)(6) that quarterly fees are to be paid until a case is converted or is dismissed. Amended § 1930(a)(6) provides no ending point for payment of quarterly fees by successful Chapter 11 debtors whose cases are not converted or dismissed. However, the U.S. Trustee concedes that Congress could not have intended that a successful Chapter 11

debtor pay quarterly fees to the U.S. Trustee ad infinitum. *See Public Citizen v. United States,* 491 U.S. 440, 465–66, 109 S.Ct. 2558, 2572, 105 L.Ed.2d 377 (1989) (literalistic reading of contested statute would have resulted in covering "far more groups and arrangements than Congress could conceivably have intended").

Recognizing the absurdity of the statute as written (or, perhaps more charitably, the gap Congress created by its amendment of 28 U.S.C. § 1930(a)(6)), the U.S. Trustee has proposed how the court should fill the gap. It is not surprising that, as a party with a financial stake in the outcome of these cases, the U.S. Trustee has proposed filling the gap in a manner that would greatly increase the amount of quarterly fees owed to the U.S. Trustee. The U.S. Trustee suggests the "closing" of a Chapter 11 case as an ending point for fee collection, but nothing in the statute's words would suggest or require such an ending point.

█ The U.S. Trustee has suggested the court could require that all debtors with plans confirmed prior to January 26, 1996 pay quarterly fees until the cases are closed. However, this rewriting of the statute would result in a number of problems. First, such an interpretation raises constitutional concerns. The debtors argue with some persuasive force that the U.S. Trustee's interpretation would violate due process, is unconstitutionally retroactive, and is too vague to be enforced. Courts should avoid an interpretation of a statute that raises constitutional concerns.[11]

█ Second, the U.S. Trustee's proposal would cause § 1930(a)(6) to conflict with several provisions of the Bankruptcy Code.[12]

**11.** The Supreme Court has stated, " 'When the validity of an act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' " *Public Citizen v. United States,* 491 U.S. 440, 465–66, 109 S.Ct. 2558, 2572, 105 L.Ed.2d 377 (1989), *quoting Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). *See also Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634

(1988) (construe statute to avoid serious doubts as to constitutionality); *NLRB v. Catholic Bishop,* 440 U.S. 490, 501–504, 507, 99 S.Ct. 1313, 1319–1321, 1322, 59 L.Ed.2d 533 (1979). "[C]ourts should construe statutes to avoid not only constitutional invalidity but also constitutional doubts." Sunstein, *supra,* at 469, *citing NLRB v. Catholic Bishop,* 440 U.S. 490, 99 S.Ct. at 1314.

**12.** An important canon of construction is that statutes governing the same subject matter should be construed together as a whole. *Church of the Holy Trinity v. United States,* 143

For example, under § 1141(a), with certain exceptions not relevant here, "the provisions of a confirmed plan bind the debtor, ... any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a). Pursuant to § 1141(b), "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Under § 1142(a), "[n]otwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court." Unless provided for under a plan, post-confirmation quarterly fees would upset provisions of a plan which are supposed to be binding on the parties and which generally result in there being no estate res available for payment of quarterly fees post-confirmation.

Under 11 U.S.C. § 1127(b), "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan ..." 11 U.S.C. § 1127(b). Unless a plan provided for post-confirmation fees, the U.S. Trustee's approach is an attempt to modify a plan, in some cases even after substantial consummation of a plan, and the U.S. Trustee is not permitted to modify plans, given the provisions of 11 U.S.C. § 1127(b).

There is nothing in the legislative history to indicate that Congress intended to create a significant conflict between 28 U.S.C. § 1930(a)(6) and the above provisions of the Bankruptcy Code. The U.S. Trustee's interpretation would result in taking funds earmarked for creditors under a confirmed plan or encroaching upon property now vested in a reorganized debtor pursuant to a confirmed plan.

Third, in addition to the constitutional problems and conflicts with Bankruptcy Code provisions, the U.S. Trustee's proposed interpretation would collide with res judicata principles. An order confirming a Chapter 11 plan of reorganization is a final order binding all parties, including the U.S. Trustee. The confirmation order is a final adjudication. *Sanders Confectionery Products, Inc. v. Heller Financial,* 973 F.2d 474, 480 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *Precision Autocraft,* 197 B.R. at 906. Parties rely on the provisions of a confirmed plan which is typically the product of extensive negotiation among interested parties, often including the U.S. Trustee. The U.S. Trustee's approach would require ignoring a final confirmation order of the court.

Res judicata promotes fairness to parties who have negotiated and relied upon Chapter 11 plans. The unfairness of the U.S. Trustee's position is illustrated in the cases before the court. For example, in the *Woods* case Mr. and Mrs. Woods completed all their plan payments, except for their continuing obligation to a bank, three years before Congress amended § 1930. Mr. and Mrs. Woods apparently live on a modest income. They pay $649.00 per month on their bank debt. It would be an unfair financial burden to impose additional, unforeseen U.S. Trustee fees on this couple who justifiably thought their Chapter 11 confirmation was a final order. In *Ligonier Powders, Inc.,* the debtor's assets were sold and all plan payments were completed before the amendment to § 1930. There are no funds available to

U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). *See also United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (if possible, construe statute in such fashion that every word has some operative effect). Statutes should be construed to avoid irrationality. *Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 453–55, 109 S.Ct. 2558, 2566–67, 105 L.Ed.2d 377 (1989).

Government proposals for meaning do have limits. *See Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) ("What the Government asks [and does not get] is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.").

make the new payment now suggested by the U.S. Trustee. Requiring creditors to return distributions already received under confirmed plans, to accommodate the U.S. Trustee's position, would be unfair, unworkable, and contrary to the finality of a confirmed plan.

■ Fourth, the U.S. Trustee's proposed enlargement of § 1930 would create issues of bankruptcy court jurisdiction. After confirmation of a Chapter 11 plan, the bankruptcy court's jurisdiction is generally limited to enforcing the provisions of the confirmed plan. Chapter 11 plans typically do not attempt to provide for retention of jurisdiction over claims not specified in the plan and arising post-confirmation. If the U.S. Trustee's position (that amended § 1930 applies to all cases confirmed before January 1996) were correct, bankruptcy courts may not have jurisdiction to effectuate collection of the post-confirmation quarterly fee. *Gryphon at the Stone Mansion, Inc. v. U.S. Trustee*, 204 B.R. 460, 462–63, 468–69 (Bankr.W.D.Penn. 1997).

For the above reasons, the court rejects the U.S. Trustee's proposal to require all Chapter 11 debtors to pay post-confirmation quarterly fees until the case is "closed." The court also rejects the debtors' suggestions to deal with the infirmities of the statute.

Counsel for Uncle Bud's Inc. suggests that quarterly fees stop accruing upon confirmation. Memorandum in Opposition to Post-confirmation Fees Under 28 U.S.C. § 1930(a)(6) filed August 23, 1996 at page 12. However, this interpretation would result in placing parties back in the pre-amendment situation of only paying quarterly fees until confirmation, clearly not what Congress intended.

Counsel filing an amicus brief has suggested that § 1930(a)(6) be construed to mean quarterly fees are due until the effective date of a plan, or until the case is dismissed or converted, whichever occurs first. Response and Memorandum of Law Opposing Retroactive Application of Amended 28 U.S.C. § 1930(a)(6) filed by Lassiter, Tidwell & Hildebrand on September 6, 1996 in *Uncle Bud's* case at pages 1–2. Such a proposed interpretation has some merit since it is a way to harmonize amended § 1930 with 11 U.S.C. § 1129(a)(12).[13] This may be a sensible approach to filling the gap in the statute, in cases with plans confirmed *after* the effective date of the statute, if the U.S. Trustee has not negotiated a plan provision for additional quarterly fees payable after the effective date of a confirmed plan. The court, however, is expressing no opinion on the meaning of 28 U.S.C. § 1930(a)(6) in cases with plans confirmed on or after the effective date of the January 26, 1996 amendment.

Having rejected the parties' recommendations, the court is left with the problem of filling the gap created by the amendment to § 1930 in a way that will avoid an unconstitutional application of the statute, that will consider the statute in the context of relevant Bankruptcy Code provisions, that will provide uniformity and consistency in the numerous impacted cases, and that will best follow the intent of Congress.

■ Since it is clear that Congress intended that quarterly fees be collected even after confirmation, the Court must balance that intention with the principles of res judicata, constitutionality, fairness, and jurisdictional powers of post-confirmation enforcement. The most suitable remedy is to require that all confirmed plans with an effective date before January 26, 1996 containing provisions for payment of post-confirmation quarterly fees be enforceable. Likewise, those plans confirmed before the relevant date that do not include a provision for payment of quarterly fees be equally enforceable.

The obviousness of the practical effect of this decision is not lost on the Court. How-

---

**13.** Under 11 U.S.C. § 1129(a)(12), a court shall confirm a plan only if certain requirements are met, including ("[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."). 11 U.S.C. § 1129(a)(12). The U.S. Trustee's version of the quarterly fee statute (and concededly this court's interpretation) cannot comply with § 1129(a)(12)'s requirement of payment on or before the effective date, unless effective dates are artificially postponed until a case is ready to be closed.

ever, the pre-amendment plans are what all parties, including the U.S. Trustee, have been relying on, and operating under, since confirmation up until today. To change the agreement at this late date raises infinite questions of fairness, practicality, and legality.

Any post amendment plan that contains a negotiated provision for the payment of post-confirmation quarterly fees to the U.S. Trustee is enforceable; just as is any plan now negotiated that does not contain a provision for quarterly fees post-confirmation. In other words, the U.S. Trustee and debtors are free to negotiate the requirement of post-confirmation quarterly fees in post amendment plans, but whatever is decided in the confirmed plan is the law of the case. The Court's ruling as to the pre-amendment plans is no different.

Accordingly, it is the decision of this Court that the U.S. Trustee is bound by a confirmed plan that has no explicit provision for post confirmation quarterly fees in cases with plan effective dates prior to the January 26, 1996 amendment of 28 U.S.C. § 1930(a)(6).

## IV. CONCLUSION

For the above reasons, the U.S. Trustee's objections to the debtors' Final Reports are overruled. Appropriate orders will be entered in accordance with this memorandum opinion.

It is, THEREFORE, so ordered.